Tolomeo et al., Appellants, *v.* Harmony Short Line
Motor Transportation Co. et al.

Argued March 24, 1944. Before MAXEY, C. J., DREW,
LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*A. Morris Ginsburg,* for appellants.

*D. H. McConnell,* with him *Dickie, Robinson & Mc-Camey,* for appellees.

OPINION BY MR. JUSTICE HORACE STERN, May 22, 1944:

There is practically no controversy in this case as to the manner in which the accident happened and scarcely any as to its cause. On the evening of December 24, 1941, plaintiffs—husband, wife, and their four children—were the occupants of an automobile moving in an easterly direction along the Saltsburg Road in Allegheny County. That road is a two-lane highway 18 feet in width and, at the point of the accident, makes a 45 degree curve to the left in the direction in which plaintiffs were traveling. Their automobile had been following about two or three car lengths to the rear of a large bus belonging to Harmony Short Line Motor Transportation Company but operated by Edwards Motor Transit Company to which the bus and its driver had been leased and complete control surrendered. The driver, who admittedly was unfamiliar with the road, made such a sharp turn in following the curve to the left that the bus passed across the white line which there marked the centre of the highway, and, before it fully regained the proper side, its left rear came into collision with the front left side of an automobile which, driven by a man named Schack, was coming in the opposite direction. When the bus went over to the wrong side of the road the Schack car was distant from it not more than 50 feet and this gap was almost instantly closed by his car, traveling at the rate of 20 miles an hour, traversing 20 feet and the bus, traveling at the rate of 25 or 30 miles an hour, traversing 30 feet. The impact rendered Schack unconscious and threw the car out of his control; it careened over to the opposite side of the road where it crashed into the automobile of the plaintiffs, causing them the injuries and property damage which gave rise to the present suit.

When the action was started it was brought against both the Harmony Company and the Edwards Company, each of which filed an affidavit of defense denying the agency of the operator of the bus; the affidavit of the Harmony Company was fully justified but that of the Edwards Company was not, because, as the testimony subsequently disclosed, the bus was unquestionably being operated for and by the Edwards Company. However, agency being thus denied, it became necessary for plaintiffs to prove it, and for that purpose they called, among others, the bus driver himself, but confined his testimony strictly to the subject of his employment. They then produced their evidence in relation to the accident and rested, whereupon counsel for the Edwards Company (a compulsory non-suit having meanwhile been entered as to the Harmony Company)[1] asked, and was permitted, to call the driver "for further cross-examination". He then, over the strenuous objection of counsel for plaintiffs, questioned the driver at length as to the manner in which the accident happened.

The jury returned a verdict for defendant, which was a surprising result in view of the fact that plaintiffs were admittedly innocent victims, that they were free of any possible charge of contributory negligence, that the extent of their injuries was not challenged, that there was no competent evidence to indicate that Schack was in any way responsible for the accident, that defendant produced no testimony whatever on its own behalf, and that the operator of the bus, even under the persuasive "cross-examination" by defendant's counsel, was apparently unable or unwilling to assert with any degree of assurance that the rear end of the bus was not on the wrong side of the road when the collision occurred.[2] Be

---

[1] Hereinafter the term "defendant" will be used to refer to the Edwards Company only.

[2] Q. "There has been testimony here that you were on the left side of the road as you came around the curve. Is that true as far

this as it may, there were errors in the trial which require a reversal of the judgment.

The first such error was the one already referred to, —the permission to defendant's counsel to cross-examine the operator of the bus as to the facts of the accident. It is elementary that, unless the witness is himself one of the litigants (*Greenfield v. Philadelphia*, 282 Pa. 344, 127 A. 768), cross-examination of his testimony should be confined to the matters upon which he was examined in chief. This has been the rule in Pennsylvania since it was proclaimed by Chief Justice GIBSON in 1827 in *Ellmaker v. Buckley*, 16 S. & R. 71, 77, 78, and it has been consistently adhered to ever since;[3] there was no intention to impair it, as a general principle, by anything that was said in the course of the court's opinion in *Conley v. Mervis*, 324 Pa. 577, 188 A. 350. It is true that considerable latitude must be left to the trial judge, and his action will not be reversed in the absence of an abuse of discretion or unless obvious disadvantage resulted there-

as you know?" A. "No, sir. As far as I know I had the bus on the right hand side of the road." Q. "Could you see the rear end of your bus at the time?" A. "I didn't recollect the back end." Q. "You didn't see the rear end out on the left hand side to know exactly where it was?" A. "I never took notice to that." Q. "Well, when you were driving the bus on the road then, you couldn't say exactly the spot where the rear wheels were on the road, the rear end of the bus?" A. "No, sir, I really took no notice of it." Q. "To the best of your knowledge you were on the right side as far as you could get, were you?" A. "Yes, sir."

[3] *Breinig v. Meitzler*, 23 Pa. 156, 161; *Turner v. Reynolds*, 23 Pa. 199, 206; *Helser v. McGrath*, 52 Pa. 531, 533; *Jackson v. Litch*, 62 Pa. 451, 455; *Monongahela Water Co. v. Stewartson*, 96 Pa. 436, 438; *Glenn v. Philadelphia & West Chester Traction Co.*, 206 Pa. 135, 137, 55 A. 860; *Snyder v. Reading Co.*, 284 Pa. 59, 61, 130 A. 398, 399, 400; *Goodbody v. Margiotti*, 323 Pa. 529, 538, 187 A. 425, 429; *E. Bradford Clarke Co. v. Baltimore & Ohio R. R. Co.*, 27 Pa. Superior Ct. 251, 256; *Keystone Brewing Co. v. Varzaly*, 39 Pa. Superior Ct. 155, 158, 159; *Miskovich v. Firemen's Insurance Co. of Newark*, 135 Pa. Superior Ct. 339, 342, 5 A. 2d 628, 629; *Henry, Pennsylvania Trial Evidence* (3d ed.), sections 482, 485.

from to the other party.[4] But in the present case it is obvious both that discretion was abused and that harm did result to plaintiffs. By denying the agency of the operator of the bus defendant made it necessary for plaintiffs to call him, an essentially hostile witness, out of the camp of the enemy in order to question him as to his employment; certainly defendant should not have been allowed to take advantage of the situation which it thus created by attempting to make the operator's version of the accident appear as though it came from a witness selected by plaintiffs themselves. This was an extension of the right of cross-examination without parallel in any reported case and particularly objectionable because the testimony elicited on cross-examination went to the very heart of the controversy. That plaintiffs suffered injury thereby is too plain for argument; the witness's testimony was educed by a most flagrant series of leading questions, while, on the other hand, the right of cross-examination—stated by Wigmore to be "the greatest legal engine ever invented for the discovery of truth" [5]—was denied to plaintiffs so far as this important witness was concerned. Moreover, the evil of the situation was intensified by the learned trial judge's charging the jury that the side that called a witness held him out as credible, a statement which was unwarranted where, as here, the cross-examination of the witness by defendant's counsel was improperly allowed.[6]

---

[4] *Helser v. McGrath*, 52 Pa. 531, 532, 533; *Jackson v. Litch*, 62 Pa. 451, 455, 456; *Glenn v. Philadelphia & West Chester Traction Co.*, 206 Pa. 135, 137, 138, 55 A. 860; *Kaplan v. Loev*, 327 Pa. 465, 469, 470, 194 A. 653, 655; *Commonwealth v. Craven*, 138 Pa. Superior Ct. 436, 445, 11 A. 2d 191, 196.

[5] Wigmore on Evidence (2d ed.), section 1367; see *Pusey's Estate*, 321 Pa. 248, 268, 184 A. 844, 853; *Kaplan v. Loev*, 327 Pa. 465, 471, 194 A. 653, 656.

[6] Cf. *Hughes v. Westmoreland Coal Co.*, 104 Pa. 207, 213; *Longenecker v. Pennsylvania R. R. Co.*, 105 Pa. 328, 334; *Sullivan v. New York, Lake Erie & Western R. R. Co.*, 175 Pa. 361, 365, 34 A. 798, 799;

Another error, this time of a substantive rather than a procedural nature, occurred in the charge of the learned trial judge in reference to the possibility of negligence on the part of Schack being a causal factor in the happening of the accident. Several times the jury were told to consider whether or not there was such negligence, and, if so, whether it amounted to an intervening and proximate cause which superseded and legally nullified the negligence of the operator of the bus. There was, however, no competent evidence from which it could be found that Schack was negligent, the only testimony on the subject being that when the bus veered over in front of him on this two-lane highway the vehicles were not more than 50 feet apart and, as the bus continued toward him, he had practically neither time nor space in which to avoid the collision. The bus operator, in response to a leading question whether Schack "went by you so *fast* you didn't get a chance to see how fast he was going?" answered: "That's right," but such a statement is of no evidential value whatever,[7] and the objection to it made by plaintiffs' counsel should have been sustained. Moreover, even if by any possible inference Schack, who, incidentally, was not brought in by defendant as an additional defendant, could be considered as having been negligent in the operation of his car, the result would only be to make him concurrently liable, jointly and severally, with defendant, no question of proximate cause being involved: *Hughes v. Pittsburgh Transportation Co.*, 300 Pa. 55, 59, 150 A. 153, 154, 155; *Holstein v. Kroger Grocery &*

---

*Morris v. Guffey & Queen*, 188 Pa. 534, 540, 41 A. 731, 732; *Smith v. Standard Steel Car Co.*, 262 Pa. 550, 556, 557, 106 A. 102, 104; *Burke, Executor, v. Kennedy*, 286 Pa. 344, 350, 133 A. 508, 510; *Fetterolf v. Yellow Cab Co.*, 139 Pa. Superior Ct. 463, 471, 472, 11 A. 2d 516, 520.

[7] *Warruna v. Dick*, 261 Pa. 602, 605, 104 A. 749, 750; *Dopler v. Pittsburgh Rwys. Co.*, 307 Pa. 113, 117, 160 A. 592, 593; *Otis v. Kolsky*, 94 Pa. Superior Ct. 548, 551; *Wertz v. Shade*, 121 Pa. Superior Ct. 4, 9, 182 A. 789, 791; *Commonwealth v. Kalb*, 129 Pa. Superior Ct. 241, 243, 244, 195 A. 428, 429.

*Baking Co.*, 348 Pa. 183, 185, 186, 34 A.2d 491, 492. It is only "where a second actor has become aware of the existence of a potential danger created by the negligence of an original tort-feasor, and thereafter, by an independent act of negligence, brings about an accident," that "the first tort-feasor is relieved of liability": *Kline v. Moyer & Albert*, 325 Pa. 357, 364, 191 A. 43, 46.

Finally, the verdict should have been set aside as being against the weight of the evidence. As already stated, there is no element of contributory negligence in the case, the accident could not have happened except through some negligence, there is no evidence which would justify a finding that Schack was negligent, the clear and positive testimony that the bus passed over to the wrong side of the road was only waveringly disputed by defendant's operator, and defendant offered no testimony of its own as to the happening of the accident.

Judgment reversed and new trial granted.