### NORWOOD v. GREAT AMERICAN INDEMNITY CO.
### No. 8492.

Circuit Court of Appeals, Third Circuit.
Argued Feb. 21, 1944.
Decided Dec. 26, 1944.

Harry Reiss Axelroth, of Philadelphia, Pa. (Axelroth & Porteous, of Philadelphia, Pa., on the brief), for appellant.

D. Alexander Wieland, of Philadelphia, Pa. (Joseph J. Brown, of Philadelphia, Pa., on the brief), for appellee.

Before MARIS and JONES, Circuit Judges, and BARD, District Judge.

JONES, Circuit Judge.

The plaintiff, as the beneficiary of each of two policies of insurance on the life of her husband (the one issued by the Great American Indemnity Company, and the other by the Prudential Insurance Company of America) brought suit on the policies for the death of the insured. As the question of the insurer's liability in both cases grows out of the same set of facts, subject to the same rules of law, the two cases were tried together. A verdict was returned for the plaintiff against each of the defendants whereon judgments were entered. Only the Great American Indemnity Company has appealed.

The policy, upon which the appellant was sued, insured "against loss resulting directly and independently of all other causes from bodily injury sustained during the term of this policy and effected solely through accidental means." The policy further provided that it did not cover death caused directly or indirectly, wholly or partly, by disease or infection. In the case of the Prudential policy, the controversy revolved about a provision for double indemnity for the insured's accidental death. In each instance the question for the jury was whether the insured's death was caused by accidental means as prescribed and limited in the policies. On this issue both sides offered expert testimony and, as happens not infrequently, the opinions of the experts differed widely.

The plaintiff offered evidence to prove that the insured, who was fifty-six years of age at the time of his death, was a medical officer in the United States Navy; that he had been in active service, ashore or at sea, since the time of his marriage to the plaintiff in 1933; that he had consistently been declared fit for duty each year of his entire career as a naval officer; that he had had two minor operations, one in 1934 and the other in 1938; that he had been on active duty at the Naval Medical Supply Depot in Brooklyn, New York, from December 12, 1941, until the time of his death on January 12, 1942; that about 9:30 in the evening of the latter date, the insured, while taking a shower, fell in the bath tub thereby suffering a blow on the back of his head; and that he died about 11 p. m. that same night. The autopsy reports of the Naval Hospital were conflicting, but both the plaintiff's and the defendants' respective experts testified that edema of the brain was the principal cause of the insured's death. The plaintiff's expert was of the opinion that the edema resulted from the blow on the insured's head.

The principal matter assigned for error by the appellant is the trial court's admission, over the defendants' due objection, of a conversation had between Mrs. Norwood (the plaintiff) and her husband subsequent to his fall in the bath tub.

After relating how her husband had entered the bathroom in their apartment in New York City about 9:30 p. m. to take a shower, Mrs. Norwood testified that shortly thereafter she had heard "a terrific crash" and went immediately to the bathroom, opened the door and saw her hus-

band in a half-sitting position trying to get out of the bath tub. She *asked* him "what had happened" and "He said he was trying to end his life on a piece of soap", at the same time handing her the soap. After so conversing briefly, Mrs. Norwood "withdrew from the bathroom". In about four or five minutes, the insured emerged from the bathroom dressed in his pajamas. He sat down, smoking a cigarette. While sitting there, he rubbed the back of his head. [Mrs. Norwood] *asked* him "if he had hurt himself" and "he said he had given himself an awful whack on the back of his head in a very vital spot." After retiring, the husband was unable to go to sleep and, during the next hour, there was further conversation between him and his wife as to his condition. In answer to *the wife's inquiry* as to whether "he thought the fall had anything to do with it", he said, "I am very much afraid that it had" and he "repeated again that he had given himself an awful whack on the back of the head in a very vital spot." He grew pale, was apprehensive, said he felt "impending disaster" and that his heart seemed to be missing a beat. About an hour and a half after the fall (around 11 o'clock), he turned over in bed, gasped and died. It will be noted that the insured's first statement after his fall came in response to his wife's interrogation and consisted only of what she termed an "amusing remark". Likewise, most of the subsequent conversation was the result of Mrs. Norwood's direct inquiries concerning her husband's condition and did not contain spontaneous utterances by him about his fall or injury.

■ All of the questions presented on this appeal relate to rules of evidence as to which the law of the forum controls. See Pritchard v. Norton, 106 U.S. 124, 133, 134, 1 S.Ct. 102, 27 L.Ed. 104; Restatement, Conflict of Laws (1934 Ed.) § 597. In determining such questions, a federal trial court has great latitude under Rule 43 (a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which provides, in material part, that the statute or rule, federal or state, which favors the reception of proffered evidence shall govern its admissibility.

Even under such broad leeway, it is still open to serious question whether the hearsay as to the cause and effect of the in-sured's injury which Mrs. Norwood related as a witness was competent as a part of the res gestae. The learned trial judge first ruled it out, upon objection, but reversed the ruling when informed that the deceased's statements were made within an hour or two of his death. The court assigned the latter fact as justifying the admission of the evidence. However, it had not been offered as an ante mortem statement. Nor were there present the circumstances necessary to qualify it as such. But, interesting as is the question of res gestae presented by this record, we think it became academic by the end of the trial.

■ The trial court can not be thought to have erred in refusing to grant a new trial or set aside the verdict or disturb the judgment when its refusal so to do did not appear to the court to be inconsistent with substantial justice. See Rule 61, Federal Rules of Civil Procedure. Our present inquiry, therefore, is whether the trial court erred in treating the admission of the evidence above referred to as not constituting, in effect, substantial error. The same limit to the inquiry is also laid upon us by Sec. 269 of the Judicial Code [1] which provides that "on the hearing of any appeal * * * the court shall give judgment * * * without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

■ We think that the error (assuming it to have been such) in the trial court's admission of the insured's conversation with his wife concerning his injury became unsubstantial as the trial progressed.

The record discloses that on cross-examination of the plaintiff, appellant's counsel elicited substantially the same evidence concerning the accident and its effect, e. g., the insured's complaining of a pain in his head and stating that his heart was missing a beat. In fact, the first question asked plaintiff on cross-examination concerned the insured's expressed apprehension of impending disaster. Further on in the trial, the insured's declarations as to his heart and impending disaster were referred to by appellant's counsel in interrogating his own expert who utilized that information when giving his opinion that disease was the cause of the insured's death. The appellant also offered in evidence a documentary exhibit which recited substantially

---

[1] R.S. § 726. Act of Mar. 3, 1911, c. 231, § 269, 36 Stat. 1163, as amended by the Act of Feb. 26, 1919, c. 48, 40 Stat. 1181, 28 U.S.C.A. § 391.

the same matters contained in the evidence whereof it now complains. In the light of these circumstances, it is our opinion that, whatever error may have been committed in admitting the evidence in the first instance, the error became harmless in the sense that it became unavailing to the appellant as ground for reversal. See McCabe v. Cannoe, 304 Pa. 497, 499, 500, 156 A. 77; Van Eman v. Fidelity & Casualty Co. of New York, 201 Pa. 537, 541, 542, 51 A. 177. Cf. Standard Acc. Ins. Co. v. Rossi, 8 Cir., 52 F.2d 547, 550; Gilmore v. McBride, 9 Cir., 156 F. 464, 467.

■ The appellant's second point is that the original hospital records and the photostatic copies of the insured's service record were improperly received in evidence over objection.

The hospital records were the official records of the Brooklyn Naval Hospital and related to the autopsy performed on the body of the insured in the regular course of the hospital's business functions. The custodian of these records testified as to their preparation and authenticity. In our opinion, they were admissible in evidence under applicable federal statute [2] and decisions. See Reed v. Order of United Commercial Travelers of America, 2 Cir., 123 F.2d 252, 253; Ulm v. Moore-McCormack Lines, Inc., 2 Cir., 115 F.2d 492, 494, certiorari denied 313 U.S. 567, 61 S.Ct. 941, 85 L.Ed. 1525. Cf. also Hunter v. Derby Foods, Inc., 2 Cir., 110 F.2d 970, 972, 133 A.L.R. 255. The records were also admissible under local rules. See Act of Assembly (Pennsylvania) of May 4, 1939, P.L. 42, 28 P.S. § 91b; Freedman v. Mutual Life Insurance Company of New York, 342 Pa. 404, 411, 412, 414, 21 A.2d 81, 135 A.L.R. 1249; Paxos v. Jarka Corporation, 314 Pa. 148, 153, 171 A. 468. In the case last cited it was said that three specified requisites must appear in order to make the evidence admissible. All three requisites are fully supplied by the testimony in this case with respect to the hospital records. Moreover, the information which they contained was used, in part, by the appellant's own experts in formulating their opinions as to the cause of the insured's death.

■ We see no error in the admission of the hospital records and the same may be said for the admission in evidence of the insured's service record. It was an official Government record of the insured's assignments to duty throughout his career as a naval officer. Substantially, the same evidence had already appeared in the plaintiff's oral testimony which was received without objection. In addition, the service record was objected to at trial on the grounds of relevancy while the appellant now seeks to dispute its admissibility on other grounds. This it may not do. "A specific objection *overruled* will be effective to the extent of the grounds specified, and no further. An objection *overruled*, therefore, naming a ground which is untenable, cannot be availed of because there was *another and tenable ground which might have been named* but was not." 1 Wigmore, Evidence, § 18, pp. 339, 340; Morgan v. Gamble, 230 Pa. 165, 174, 79 A. 410.

■ The appellant next contends that the plaintiff's evidence was contradictory in that the death certificate offered in evidence by her gave the cause of death as hypertensive heart disease while the plaintiff's expert testified that the insured's death was due to the blow on his head. From this the appellant argues that the plaintiff failed to meet her burden of proving an accidental death free of any natural causes. There is no such conclusive conflict in the evidence in the plaintiff's case as would justify us in saying as a matter of law that the plaintiff failed to meet her burden. The statements in the death certificate were not conclusive upon the plaintiff but were open to contradiction by her. While a death certificate may be prima facie evidence of the facts stated therein, it is always open to contradiction (Evans v. Penn Mutual Life Insurance Co., 322 Pa. 547, 556, 186 A. 133) by either party regardless of who offered it. Cockcroft v. Metropolitan Life Insurance Co., 125 Pa. Super. 293, 299, 300, 189 A. 687. So much of the appellant's argument in this connection as is based upon attacks on the credibility of the plaintiff's witnesses involves matter which was for the jury's consideration.

■ Finally, the appellant complains of the conduct of the trial judge. Our examination of the record justifies us in saying that the instances of unfairness or partiality on the part of the trial judge, cited by the appellant, whether taken separately or all together, did not constitute prejudicial error. At no time did the trial judge

---

[2] Act of June 20, 1936, c. 640, Sec. 1, 49 Stat. 1561, 28 U.S.C.A. § 695.

abuse his role which is well defined in Kettenbach v. United States, 9 Cir., 202 F. 377, 385, as follows: "The trial judge in a federal court is not a mere presiding officer. It is his function to conduct the trial in an orderly way with a view to eliciting the truth, and to attaining justice between the parties. It is his duty to see that the issues are not obscured, that the trial is conducted in a proper manner, and that the testimony is not misunderstood by the jury, to check counsel in any effort to obtain an undue advantage or to distort the evidence, and to curtail an unnecessarily long and tedious or iterative examination or cross-examination of witnesses. He has the authority to interrogate witnesses, and to express his opinion upon the weight of the evidence and the credibility of the witnesses. In the case at bar there was no such expression of opinion by the court, and there is nothing in the record which is before us to indicate or to give the jury the impression that the judge was in any degree partial or biased or prejudiced against the plaintiffs in error."

The judgment of the District Court is affirmed.