Central Greyhound Lines of New York *v.* George
(et al., Appellant).

Argued September 28, 1954. Before STEARNE,
JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*John G. Gent,* with him *Brooks, Curtze & Gent,* for appellants.

*William F. Illig,* with him *Gifford, Graham, Mac-Donald & Illig,* and *Adam A. Gorski,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, November 8, 1954:

On January 5, 1952, U. S. Route 20 in the vicinity of Erie was covered with snow and ice to an extent which proclaimed careful and cautious driving to all motorists on the highway. At a point 11 miles east of Erie, a light Balkan Bakery truck and a passenger bus belonging to the Central Greyhound Lines of New York with 21 passengers aboard were moving westwardly, the truck preceding the bus by about 600 feet. On the same highway, a huge Western Express tractor-trailer was moving in the opposite direction, that is eastwardly. When the tractor-trailer and the bakery truck were about 125 feet away from one another the bakery truck lost traction and spun across the highway, striking with a glancing blow the tractor-trailer which continued unimpeded on its way. The driver of the passenger bus, witnessing the bakery truck spinning across the highway, slowed down, guided his bus to the right side completely off the highway and on to the berm and stopped within 200 feet. The Western Express tractor-trailer, continuing straight ahead after the collision with the bakery truck, now began to inch over to its left, diagonally crossed the highway and crashed into the stationary bus, inflicting on the bus considerable damage.

In the ensuing lawsuits and combined trial, the driver of the Western Express Company obtained a verdict against the Balkan Bakery for the comparatively slight damages sustained by the tractor-trailer. The jury also returned a verdict in favor of the Central Greyhound Lines against the Western Express Company and its driver, Ivon C. Handrick. The Western Express Company and Handrick, to be referred to in this Opinion as the defendant, moved for judgment n.o.v. and a new trial. The motions were refused and this appeal followed.

It is the contention of the defendant that since the jury has exonerated it of blame in the collision with the Balkan Bakery truck, it must also be cleared of fault in the collision with the passenger bus. The defendant's theory is that the double crash constituted only one accident and that the original fault of the Balkan Bakery carried through to, and was responsible for, also, the second crash. But contiguity of circumstances does not necessarily entail similarity of design. If motorist A strikes motorist B, this does not justify motorist B in striking motorist C if he can reasonably avoid striking motorist C.

Although only seconds apparently separated the Balkan-Western Express encounter from the Western Express-Greyhound bus crash, the two collisions were in point of physics, cause and effect, and liability as separable as if hours had divided them.* When three automobiles become involved in two collisions, the line

---

* Despite the undeviability of time as recorded by chronometer, it is, in point of relationship to circumstance subject to variable appraisement. The seconds which precede grave disaster are more capable of division and unit appraisement than the minutes or hours of a tranquil country summer afternoon.

of demarcation between the collisions is drawn at the point where the culpable force of the first collision has spent itself and a new train of energy, direction and voluntary control begins.

Reviewing the evidence in the light most favorable to the plaintiff Central Greyhound Lines, we conclude that the Western Express tractor-trailer in its contact with the bakery truck sustained no damage which affected the propelling and steering instrumentalities of the tractor-trailer. The record reveals that instead of moving over to his right and on to the berm after the first accident, the driver Handrick did not even slow down the speed of his massive equipment but ploughed ahead at 35 miles per hour for over 400 feet on glazed icy pavement and then headed into the passenger bus on his, Handrick's, wrong side of the road. We do not need to quote authority for the proposition that the motorist whose car is found on the wrong side of the highway after an accident has to offer an explanation as to what he was doing where normally he had no right to be. Whether that explanation coincides with the duty of exercising due care under the circumstances is for the jury to decide. Here the jury decided that Handrick's explanation fell short of meeting the criterion of due care.

That the momentum with which Handrick crashed into the passenger bus was a tremendous one is verified by the fact that the impact caused the bus to dislodge a telegraph pole imbedded in the frozen earth and move it 1 and $\frac{1}{2}$ feet from its anchorage. Furthermore, the force of the concussion unfastened the bus's engine weighing 2600 pounds and threw it free of its moorings and out of the coach. The extent of the damage done the bus can be gathered from the fact that the repair bill amounted to $15,735.09. Speaking

on the testimony of inanimate objects involved in a violent collision, this Court said in *Simon v. Moens,* 356 Pa. 361: "The mute testimony of two inanimate objects, the curb stone and the light pole, show conclusively that plaintiff's testimony in this respect [his speed] was either mistaken or false. The great force and violence with which his car ran into and over the curb, was firmly imbedded in the light pole, tore up the brick pavement around the pole and split the pole in two, was created by the speed of the car, and nothing else. These facts are undisputed, and of themselves demonstrate that the speed of plaintiff's car was excessive and negligent."

Counsel for the defendant argues in his brief that the steering wheel and axle of the tractor-trailer were so impaired by the visitation of the Balkan bakery truck that Handrick had no control over his course of travel after that first mishap. He contends further that Handrick was travelling only at 22 miles per hour, that Handrick applied his brakes and attempted to get off to the south berm, and that he tried to steer away from the Greyhound bus. But these are factual assumptions which the jury did not believe. The photographs showing the positions of the vehicles after all the forces of violence had ceased, the testimony of the witnesses, and the inferences deducible from the proved facts all argue against the conclusions of fact advanced by the defendant. It is to be noted also that shortly after the accident Handrick made a written statement in which he averred situations which were wholly contradictory to what he testified to on the witness stand.

The defendant's counsel cites in support of his legal position the cases of *Tolomeo v. Harmony,* 349 Pa. 420, and *Anderson v. Perta,* 138 Pa. Superior Ct. 321, because in the unfoldment of the accidents in those cases

the car, which would correspond to the Western Express tractor-trailer here, was found not to be at fault. A reading of those two decisions discloses, however, quite clearly that neither is apposite to the facts in the case at bar. In the *Tolomeo* case the plaintiffs were travelling in a car following a passenger bus on the same road. At a curve in the road the driver of the passenger bus made such a sharp turn that the bus passed over the dividing line and struck an automobile driven by a man named Schack, who was travelling in the opposite direction. The impact rendered Schack unconscious and his car, being left driverless, careened over to the opposite side of the road and collided with the automobile of the plaintiffs. This Court held Schack non-liable, and properly so. In the rapid fire concatenation of events, Schack's automobile became practically an inert missile thrown against the plaintiff's car by the driving force of the passenger bus.

But in the present case, Handrick, the driver of the tractor-trailer, was not injured in any way. He retained control of his vehicle and he moved 400 feet under his own propulsion and his own steering to the passenger bus which was stopped on its own side of the road—with its four wheels on the berm!

The *Anderson* case is equally inapplicable to the facts in our case. There, three vehicles were proceeding westwardly on the William Penn Highway in Blair County, the vehicles being an unnamed truck, a car owned by Perta, and a car owned by Anderson, the plaintiff. Perta, with the object of passing the truck ahead of him, turned off his own lane of traffic and crossed over to the eastbound lane, confronting another car (driven by DeMartin) which was travelling (eastwardly) in the opposite direction. To avoid colliding with Perta, DeMartin pulled to his right on

to the berm of the road where he travelled 190 feet, when, striking an obstacle, his car was thrown against the plaintiff's car. Here again, the DeMartin car (which would be comparable to the Western Express tractor-trailer in our case) was propelled through the operation of *force majeure* against the plaintiff car. The Superior Court said in that case that the evidence did not show any conduct on DeMartin's part "in the emergency which suddenly arose, due to Perta's negligence, that would convict DeMartin of failing to exercise due care under the circumstances."

But, all to the contrary in this case, there was ample evidence to show that Handrick did not exercise due care, that he did not slow down, that he did not attempt to reach the berm, that he did not use his brakes, etc., etc.

The defendant assumes that because Handrick was absolved of any charge of negligence in the encounter with the Balkan Bakery truck that this proves he was entirely free of fault prior to the happening of the first accident. This conclusion does not necessarily follow. It could well be that Handrick was driving at an excessive rate of speed before the first accident but that his speed did not contribute to the accident because, as pointed out, the Bakery truck skidded over to his (Handrick's) side of the road and struck him. Whatever was Handrick's speed prior to the first accident he apparently did not lessen it after being hit by the Bakery truck—and it was this speed which unquestionably conveyed him to the disaster he inflicted on the Greyhound passenger bus.

The defendant cannot take refuge behind the "sudden emergency rule," because the facts show that Handrick successfully rode out the sudden emergency and then continued on his own negligently-operated

journey. The ice and snow on the highway imperatively dictated a speed considerably less than that at which the defendant was travelling. In *Casey v. Siciliano,* 310 Pa. 238, 242, this Court said: "When the driver of an automobile claims that he has been subjected to a sudden emergency in driving on the highways, to enable him to claim the benefit of this rule, it must appear that he was not driving in a reckless or careless manner, but with due regard to the condition of the highway and the traffic. One driving carelessly cannot say he was placed in sudden peril. If driving in a careful manner, the peril would not have arisen. The question, therefore, is usually one for the jury to determine, under proper instruction."

While the jury absolved Handrick of contributory negligence in the first accident, it found that his negligence in the second accident was the proximate cause of that smashup. On this phase of the case, the lower Court well said: "This finding does not negative negligence on Handrick's part at and prior to the first impact. It merely negatives negligence which contributed to the happening of the first accident. If Handrick were speeding, as the evidence discloses he was, then Balkan's sudden crossing over to his side of the road did not make the speed a factor in the first impact."

After a thorough study of defendant counsel's able brief we are satisfied that there is no justification for judgment n.o.v. or for ordering a new trial. The cause was well tried by both counsel and the trial was presided over by a very able Trial Judge. When the jury returned its verdict the Trial Judge made appropriate inquiry in order to be certain that the jury thoroughly understood the nature of the verdict they were rendering: "BY THE COURT: Before I take these verdicts

I want to ask you one question, members of the jury: Do you find that Ivon Handrick was guilty of an act of negligence which was the proximate cause of the damage to the Central Greyhound Lines after the first collision? Is that what your finding is, all of you? (The jurors all answered in the affirmative.)"

The record amply substantiates and justifies this verdict, and the judgment is, therefore, affirmed.