## Okotkewicz *v.* Pittsburgh Railways Company, Appellant.

Argued October 1, 1959. Before Jones, C. J., Bell, Jones, Cohen, Bok and McBride, JJ.

*Leo Daniels*, with him *Prichard, Lawler & Geltz*, for appellant.

*Joseph I. Lewis*, for appellee.

Opinion by Mr. Chief Justice Jones, November 9, 1959:

In this trespass action for damages for personal injuries, the jury returned a verdict for the defendant. The court awarded the plaintiff a new trial on the ground that the trial judge had committed harmful error in allowing the defendant, over plaintiff's objection, to cross-examine a witness for the plaintiff excessively and in admitting (also over plaintiff's objection) rebuttal testimony for the purpose of contradicting the witness in respect of his testimony improperly elicited in cross-examination. At the defendant's instance, the trial court certified that the order granting a new trial was founded entirely, to the exclusion of any other reason, on the trial judge's allowance of the assailed cross-examination and rebuttal testimony. The record does not show that the certificate was obtained with prior notice to the plaintiff. If not, it should have been. The defendant has appealed the new trial order, contending that it should be reversed and that judgment should be entered on the jury's verdict for the defendant.

The plaintiff received the injuries, for which he brought suit, in a collision between his automobile, which he was driving, and a streetcar of the defendant company, operated by its employee, in the Borough of Castle Shannon, Allegheny County.

At trial, the plaintiff called as a witness the Chief of Police of the Borough, Andrew Orr, who, in the course of his investigation of the accident, had interviewed the motorman of the streetcar (two other persons being present during the interview). In direct examination, plaintiff's counsel questioned Orr and the latter answered, as follows: "Q. Did you interrogate the operator of the street car later? A. Yes, I did, sir. Q. What was his name? A. Charles Walter Schmidt.

Q. Did you ask him what speed he was making through the intersection there? A. Yes, sir. Q. What answer did he give you? A. Fifteen miles per hour." That was the extent of the plaintiff's direct examination of the witness Orr with respect to his conversation with motorman Schmidt subsequent to the accident.

On cross-examination, defendant's counsel asked Orr nothing concerning the speed of the streetcar at the time of the accident, as related by Schmidt at his interview by Orr, but was permitted, over plaintiff's objection, to interrogate Orr relative to statements supposedly made by him, during his interview of Schmidt, concerning admissions of causative fault on his part allegedly made by the plaintiff to Orr when the latter interviewed the plaintiff at a hospital following the accident. The culmination of defendant's cross-examination of Orr in this connection reads as follows: "Q. Do you remember relaying to them [i.e., Schmidt and the two other persons present] what Mr. Okotkewicz told you as to how it [the accident] happened? A. No. Q. You didn't? A. No. Q. Now, you didn't tell them that Lefty [the plaintiff] told you that he couldn't see the car because he came from behind an opposite bound car? A. No." The impropriety of this non-germane and otherwise objectionable cross-examination was further aggravated by testimony offered by the defendant in rebuttal.

The defendant called as a witness, Andrew B. Adamson, a general police agent of the defendant company, who was one of the persons present at the conversation between Chief Orr and motorman Schmidt. Adamson was permitted to testify, over the plaintiff's objection, for the ostensible purpose of impeaching Orr's answers during cross-examination by the defendant concerning his conversation with Schmidt, as follows: "Q. Did the Chief relay to you [during his con-

versation with Schmidt]—now, just answer this yes or no—certain information that he had secured from Mr. Okotkewicz as to what had happened? A. Yes, sir. Q. What is that? A. Yes, sir."

A single conversation may, of course, cover a number of different matters. Consequently, inquiry in direct examination strictly limited to one specific independent part does not open the door to cross-examination on all unrelated matters embraced by the conversation. Here, the single thing inquired about on direct examination with respect to Orr's interview of Schmidt was limited to what Schmidt had said the speed of the streetcar was at the time of the accident. In cross-examination defendant's counsel made no inquiry relative to Schmidt's statement about speed but went directly to what Orr, not Schmidt, was supposed to have said about an entirely different matter during his conversation with Schmidt. In this State, except where a party is the witness, cross-examination is limited to subject matters covered in direct examination. The defendant may not properly introduce his defense by way of cross-examination: *Tolomeo v. Harmony Short Line Motor Transportation Co.*, 349 Pa. 420, 37 A. 2d 511. The defendant's cross-examination of Orr, in the particular mentioned, obviously exceeded the bounds of proper cross-examination and should have been excluded upon the plaintiff's timely objection.

The cross-examination offended even more grievously. Either the cross-examiner knew or didn't know what Orr would answer to the inquiry as to whether Orr had not stated during his interview of Schmidt that the plaintiff had told him that ". . . he couldn't see the [street] car because he came from behind an opposite bound car." If Orr's response was to be an affirmation, it would have been matter of defense, and he should have been called by the defendant in its

case to testify to what would have been an admission by the plaintiff against interest. On the other hand, if Orr answered in the negative, as he actually did, the imputation of the cross-examination that he had so stated during his conversation with Schmidt, even though denied, had the capacity of putting into the minds of the jurors a suggestion that should not have been introduced.

To make matters worse, the defendant called in rebuttal Adamson, its general police agent, and asked him whether Chief Orr had related, in Adamson's presence, during Orr's conversation with Schmidt, "certain information that he [Orr] had secured from Mr. Okotkewicz as to what had happened." Adamson's answer was, "Yes, sir." This could not help but have served to confirm in the minds of the jury that the plaintiff had in fact admitted his fault with respect to the accident and that Orr was untruthful in his denial of what he was reputed to have said. If that was not the purpose of Adamson's testimony, then he would not qualify as a rebuttal witness for the purpose of impeaching Orr with respect to his denial of what he was alleged to have said in his interview of Schmidt. The improper cross-examination and rebuttal, thus circuitously injected into the evidence, undoubtedly had the effect of substantive testimony when, at best, it could have been no more than an impeachment of Orr's credibility, assuming the interrogation of Adamson had been properly phrased, as it was not, in the precise terms of the question asked Orr, which he had answered in the negative.

It requires no imagination to realize the harm that was done the plaintiff by the prejudicial errors at trial in respect of the evidentiary matters which we have discussed. The trial judge, fully realizing the harm that had been done the plaintiff, clearly and cogently said,

in the opinion for the court granting a new trial,— "We are of the opinion that by allowing this testimony the defendant was permitted to improperly convey to the jury the inference that the plaintiff was to blame for the accident. We also feel that this error was prejudicial. . . . The jury apparently received the wrong impression from this improper cross-examination. It is also possible that the jury got the impression that the plaintiff's attorney was trying to prevent the defendant's agent from telling the true story. We believe, therefore, that justice demands that a new trial be granted." With that, we thoroughly agree.

The appellant further argues that, even if the complained of cross-examination of Orr and the admission of Adamson's so-called rebuttal testimony were erroneous, the errors were cured when the plaintiff's counsel was later permitted to impart to the jury, erroneously as the defendant claims, his impression of what absent witnesses would have testified concerning the operation of the streetcar, had they been present in court. The contention is devoid of merit. This record does not present a situation where an erroneous ruling against one party to the action is offset by a subsequent mistaken ruling against the other. The harm done the plaintiff by the improper cross-examination of Orr so permeated the trial as to render innocuous the asserted error later committed against the defendant.

Order affirmed.