Brennan, Appellant, v. St. Luke's Hospital.

Argued April 23, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, POMEROY and BARBIERI, JJ.

*Frank S. Poswistilo,* with him *Brose, Poswistilo and LaBarr,* for appellant.

*James J. McConnell* and *Edward H. McGee,* with them *Snyder, Doll & Schantz,* and *Walker, Walker & Thomas,* for appellees.

OPINION BY MR. JUSTICE BARBIERI, December 29, 1971:

This is a trespass action brought by appellant as Administrator of the Estate of Rose Margaret D'Agostino, claiming damages on the ground that the decedent's death on December 29, 1966, was caused by medical malpractice. At the conclusion of the jury trial, a compulsory nonsuit was entered by the trial judge in favor of the defendant, Dr. Francis J. McAndrews. The jury found in favor of the other two defendants, St. Luke's Hospital and Dr. Ann Snyder. Appellant's motions for a new trial and judgment n.o.v. were argued before a court en banc and denied, and judgment was entered on the jury's verdict. This appeal followed. We will affirm.

Rose Margaret D'Agostino became ill late in December of 1966. She was then 23 years of age and had been in apparent good health prior to the onset of what proved to be her terminal illness. Prior to December 25, she had had some slight temperature, but had been able to visit friends, returning home on the evening of December 25th. At that time she appeared to her mother and other lay persons to be acutely ill. Both of her legs were covered with black and blue blotches, she was coughing, moaning and was quite weak. In the

next two days her temperature dropped from a high of 104° to a low of 93° and her extremities became stiff and cold. At this point, on the advice of her family physician, she was transported to defendant hospital, being then in a condition described as semi-conscious. After examination by the defendant, Dr. Snyder, she was not admitted but was sent home with a diagnosis of "gastroenteritis". She remained in bed for the next 38 hours at the end of which time her death occurred. Upon autopsy the cause of death was certified to be "intestinal gastroenteritis" and "bilateral pneumonia".

We have examined the record with care in the light of appellant's contentions, and find all of them to be without merit. Some of these contentions, however, warrant some comment. Two of the contentions have to do with a changed autopsy report and are based upon the participation of Dr. J. W. Fisher in the autopsy examination and studies and the admissibility of the new report at the time of the trial.

Dr. Fisher, a consulting pathologist at the hospital was present with others at the autopsy ordered by the coroner and held on December 30, 1966. Dr. Fisher testified that tissue was removed from the body at the autopsy, placed in paraffin blocks, kept in bottles and stored in a cabinet in Dr. Fisher's laboratory. Four months later, after a microscopic examination of some of the tissue, Dr. Fisher identified the cause of death as nonspecific myocarditis and prepared his new autopsy report.

First, we find no error, as appellant contends that we should, based upon provisions of the Uniform Business Records as Evidence Act,[1] in the admission and

---

[1] Act of May 4, 1939, P. L. 42, §2, 28 P.S. §91b. Parenthentically, we find that, on this record, the defendants met the requirements of admissibility by offering a meaningful explanation of the time lag between the gross autopsy, and the microscopic

use of the final autopsy report. The pathologist who supervised the preparation of the autopsy, Dr. J. W. Fisher, actually testified at the trial as to the specific findings and conclusions in the report. The Act in question provides a practical procedure for avoiding the bar to proof of hearsay statements in so-called business records. Here, Dr. Fisher, the person responsible for the records was present and subjected to vigorous cross-examination as to the reliability of the method of preparation, as to the contents and as to the conclusions in the report. Moreover, because of the extent of Dr. Fisher's direct testimony, from which the jury could have reconstructed the entire report, the admission of the report was proper, or at most harmless error. See *Woods v. National Life & Accident Ins. Co.,* 380 F. 2d 843 (3rd Cir. 1967).

Second, we find no merit in appellant's contention that the case should be retried on the ground that the trial court permitted unfair and prejudicial cross-examination of plaintiff's expert medical witness, particularly in allowing it to continue for too long a time. We are satisfied that the cross-examination of this expert witness as to the cause of death was within permissible limits as a test of the value of the witness' expert opinion. Admittedly, when the cross-examination finally appeared to be extended excessively as to the final autopsy report, the trial judge took steps to terminate further questioning when it appeared that defense counsel was doing more than testing the soundness of the expert's opinion. Since we conclude that

---

examination of the tissue and the final report which would permit the trial court to find "the sources of information, method and time of preparation were such as to justify its admission." The court allowed the report to be admitted only after a full discussion of the requisites for admissibility with counsel and full examination of Dr. Fisher as to the preparation of the report.

the trial judge did not abuse his discretion and that the plaintiff was not obviously injured by the challenged cross-examination, we find no basis for a new trial because of the trial court's action here. *Tolomeo v. Harmony,* 349 Pa. 420, 423-424, 37 A. 2d 511 (1944). See also *Woodland v. Philadelphia Transportation Company,* 428 Pa. 379, 238 A. 2d 593 (1968).

Appellant also urges that there was reversible error in the court's charge. Alleged errors with regard to jury instructions, of course, must be considered in relation to the entire charge, particularly other portions of the charge dealing with cognate matters, and in the light of the evidence. *Mount v. Bulifant,* 438 Pa. 265, 265 A. 2d 627 (1970). At the conclusion of the charge, plaintiff's counsel objected to the court's action in reading the following two of the defendants' points for charge:

"18. If you find that the decedent died of myocarditis as testified to by the pathologist, Dr. Fisher, then your verdict must be in favor of all of the defendants.

"23. In order to enter a verdict in favor of the plaintiff and against Dr. Ann Snyder you would be obliged to find that the cause of death was pneumonia and not congestive heart failure as testified to by Dr. Fisher as set forth in the Pathology Report."

Pursuant to the plaintiff's objections, the court modified the charge by further instructions as follows:

"This [No. 18], perhaps, must be tempered and considered in the light of any testimony that you may believe that there was a connection between myocarditis and a virus which would be consistent with the disease of pneumonia.

"The same, then, is true with respect to No. 23. . . .

"It may be too strong to say that if you find the cause of death was pneumonia and not cardiac heart

failure that you must find in favor of the Defendant. If there is evidence leading to a conclusion that the death from myocarditis could be associated with a symptom of pneumonia then those points were obviously too strong, but I will reiterate that the theory of the Plaintiff was that death occurred from pneumonia, and it is the theory of the defense that death occurred by virtue of myocarditis."

Plaintiff's counsel merely took a general exception to the charge, with no specific complaint registered about the court's modification. Since our study of the record convinces us that the cause of death question was fully and clearly presented to the jury including the inter-relationship between pneumonia and myocarditis, in light of the court's amendatory further instructions, we find no error in the charge requiring a retrial of the case.

Finally, it is argued that the verdicts in favor of Dr. Snyder and the hospital are not supported by the record. The jury could have believed competent evidence which supports their verdict. The trial in this case lasted for four days and produced a record of nearly 700 pages and we are satisfied, on the basis of an independent review of the entire record, that plaintiff was afforded a full and fair trial. All parties were permitted a full exposure of their theories to the jury and after a careful charge, the jury found for the defendants. Since this result is adequately supported by the competent evidence, it should not be disturbed.

Judgment affirmed.

Mr. Justice POMEROY concurs in the result.

Mr. Justice ROBERTS took no part in the consideration or decision in this case.

---

DISSENTING OPINION BY MR. JUSTICE O'BRIEN:

I disagree with the view of the majority and, therefore, dissent.

Initially, I do not believe that the contested autopsy report should have been admitted in evidence, and I do not agree that its admission was "at most harmless error". The Uniform Business Records as Evidence Act, Act of May 4, 1939, P. L. 42, §2, 28 P.S. §91b, under which the autopsy report was admitted as an exception to the hearsay rule, provides as follows: "A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

To fall within this definition, hospital and business records must satisfy three requirements: "(1) they must be made contemporaneously with the acts to which they purport to relate; (2) there must have been present at the time no contemplative motive for falsification; (3) they must have been made by a person having knowledge of the facts set forth, or one competent to predicate a medical and scientific opinion on the facts." *Freedman v. Mut. Life Ins. Co. of N. Y.*, 342 Pa. 404, 21 A. 2d 81 (1941); *Paxos v. Jarka Corporation*, 314 Pa. 148, 153, 171 Atl. 468 (1934).

The autopsy report in question does not meet these requirements. Hospital records are admitted because they are made during a course of treatment for the benefit of the medical personnel whose duty it is to care for the patient. There is, for this reason, no contemplative motive for falsification.

An autopsy report, especially one prepared four months after the patient's death, at a time when a conference among the decedent's mother, Dr. Snyder and a member of the hospital staff, had already put the ap-

pellees on notice that a malpractice suit was contemplated, is entirely different. Under such circumstances, the report is no longer a routine medical record to ascertain information useful in treating future patients, and it should not have been admissible under the business records exception to the hearsay rule. The Oklahoma Supreme Court reached the same conclusion in *Horn v. Sturm,* 408 P. 2d 541 (1965).

*Norwood v. Great American Indemnity Co.,* 146 F. 2d 797 (C.C.A. 3rd Cir. 1944), upon which the appellees rely, is easily distinguishable from the instant case. There, the hospital was not a party to the litigation, and the autopsy report was prepared soon after death as a routine part of the hospital's business.

The fact that Dr. Fisher testified and was subjected to vigorous cross-examination, in my view, has no bearing on the issue of the admissibility of the report. While it is clear that Dr. Fisher's testimony alone, if believed, could have led the jury to the factual conclusion for which appellees contend, the presence of the autopsy report prejudicially strengthened the likelihood of that conclusion. Appellees were obviously not content to rely solely upon Dr. Fisher's testimony, for if they were so satisfied, they would not have sought to buttress it by admission of the autopsy report. A report of this kind is surrounded by an "official document" aura and must surely weigh heavily in the minds of lay jurors.

Moreover, I believe that the cross-examination of appellant's expert witness was unfair and that permitting that cross-examination constituted an abuse of discretion by the trial court. On direct examination, appellant's expert testified that in his opinion the failure to measure up to the usual medical standards of care in the examination and treatment of the patient in the hospital emergency room was the proximate and substantial cause of the decedent's death, and furthermore,

that if the cause of death were pneumonia, evidence of such disease would have been present in the patient thirty-eight hours prior to her death.

On cross-examination, counsel for appellees devoted much effort to developing his case for the reliability of the final autopsy report as opposed to the original death certificate. After numerous questions, to which appellant's counsel objected, the court finally interceded, stating: "I have a feeling that you are right. The whole bit of pathology may be something that comes up on your side of the case, but there is no evidence that this witness relied on an autopsy. If you want to prove the value of the pathology report, I think that is the burden on your side of the case."

This comment by the court was absolutely correct. However, it is elementary that cross-examination of a witness, unless he is one of the litigants, should be confined to matters relating to his testimony on direct examination. The defendant may not introduce his defense by way of cross-examination. *Woodland v. Phila. Transp. Co.*, 428 Pa. 379, 238 A. 2d 593 (1968); *Okotkewicz v. Pittsburgh Rwys. Co.*, 397 Pa. 303, 155 A. 2d 192 (1959); *Kline v. Kachmar*, 360 Pa. 396, 61 A. 2d 825 (1948). Here, the expert did not testify as to the cause of death, only as to the negligence exhibited by the type of examination conducted and that, if pneumonia were the cause of death, as indicated on the death certificate, it could have been diagnosed by a competent examination. Appellees should not have been permitted cross-examination as to the value of their autopsy report, and the trial court allowed such impermissible questioning to continue for far too long a period.

I also find error in the court's charge quoted in the opinion of the majority, and do not believe that the quoted modifications cured the error. The charge was

an inaccurate oversimplification of the issues involved. If the jury found that the examination conducted by Dr. Snyder and the St. Luke's Hospital emergency room staff was negligently conducted, and they found that, as appellant alleges, the decedent had pneumonia on December 27, 1966, which would have been disclosed by a competent medical examination, then, even if they found that the decedent died of myocarditis, they could not excuse the appellees, unless they also found that the myocarditis was in no way related to the pneumonia. For only if the myocarditis was unrelated to the pneumonia would a negligently-conducted examination not be the proximate cause of decedent's death. The modification, in my view, compounded the error contained in the charge. Although the modification of Point for Charge No. 18 attempted to make a correction, the modification of Point For Charge No. 23 recreated the error contained in the original charge. By reiterating "that the theory of the plaintiff was that death occurred from pneumonia and it is the theory of the defense that death occurred by virtue of myocarditis," the court once again made it appear to the jury that the two possible causes of death were mutually exclusive and that a finding of death caused by myocarditis eliminated the possibility of liability.

Nor do I believe that the general exception to the charge precludes our review in these circumstances. As pointed out by the majority, the modified instructions were occasioned by appellant's specific objections, and I do not believe that it requires much of a stretch to incorporate those objections in the general exception to the charge.

I would reverse the judgment and grant a new trial.