## Dixon, Appellant, *v.* Andrew Tile and Manufacturing Corporation.

Argued November 20, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Paul J. Weinheimer,* for appellant.

*John C. Mohan,* for appellee.

OPINION BY HOFFMAN, J., February 2, 1976:

This appeal is taken from the order of the lower court granting appellee's motion for a new trial. Appellant contends that the lower court abused its discretion when it found that the jury verdict was against the weight of the evidence.

Appellant, Theodore R. Dixon, brought suit in assumpsit against appellee, Andrew Tile and Manufacturing Corporation, based on an alleged oral contract for real estate commissions. A jury trial began on April 4, 1973, and on April 11, 1973, the jury returned a verdict in favor of Dixon in the amount of $17,000. Motions for a new trial and judgment n.o.v. were filed by the appellee on April 16, 1973. The lower court denied the motion for judgment n.o.v., but granted the motion for a new trial. This appeal followed.[1]

---

1. Appellee asserts three additional grounds in support of its motion for new trial. First, appellee argues that the lower court erred when it refused to allow appellee to impeach one of appellant's

In March, 1970, Anthony Tartaglione, President of the appellee-company, was approached by one of appellant's employees regarding the possibility of producing a buyer for appellee's property located at 2250 Babcock Boulevard, Ross Township, Allegheny County. Appellant's right to the commission is based on the two alleged contracts which resulted from this initial meeting: the contract for the commissions and the contract for the sale of the property.

The following testimony concerning the contract for commissions was produced at trial: The amount of the commission was to be $15,000 (10% of the sales price of $150,000) ; appellee was to pay appellant one-third of the commission at the closing and the remainder of the commission at the rate of $1000 a year while an existing mortgage on the premises was paid off; if the mortgage was paid off earlier then the balance of the commission would be accelerated and would become payable at that

---

witnesses. Appellee's written post-trial motions did not contain this argument, nor did the lower court discuss it. It is, therefore, waived. See *Commonwealth v. Reid*, 458 Pa. 357, 326 A. 2d 267 (1974). Appellee's second contention is that the lower court's charge was inadequate because it never defined "consideration". This claim is without merit as the lower court's charge, taken as a whole, clearly sets forth the relevant criteria for the jury to consider. See, e.g., *Brennan v. St. Luke's Hospital*, 446 Pa. 339, 285 A. 2d 471 (1971). Finally, appellee argues that the lower court improperly compelled it to use two peremptory challenges to strike prospective jurors. Specifically, appellee argues that the jurors should have been stricken for cause. There is nothing in the record, nor does appellee allege, that it used all its peremptory challenges at voir dire. It is harmless error to overrule a challenge for cause where it should have been sustained if all the peremptory challenges are not exhausted. *Commonwealth ex rel. Ryan v. Rundle*, 411 Pa. 613, 192 A. 2d 362 (1963) ; *Commonwealth v. McGrew*, 375 Pa. 518, 100 A. 2d 467 (1953). Even if error were committed, therefore, it would be harmless if all peremptory challenges were not exhausted. Because we are not able to determine if appellee exhausted his peremptory challenges, we cannot decide this issue.

time; if the purchaser were to default, then the obligation to pay the remainder of the commission would terminate. A written memorandum of this commission agreement was prepared, but never executed.

The testimony of both parties regarding the contract for the sale of the property was consistent in some respects, and inconsistent in others. Both parties agreed that the contract was to be an installment land contract. Initially, the appellee demanded $30,000 down, and $120,000 in installments over 20 years at 7%. During the ensuing negotiations, the parties agreed to reduce the downpayment to $20,000 and to have the balance paid in installments over 15 years at 7%. The inconsistencies in the testimony related to whether the contract was to be recorded. The appellant presented testimony that the parties agreed to record the contract, but that the purchaser was willing to buy the property whether or not the contract was recorded. On the other hand, the appellee's president testified that he insisted throughout the contract negotiations that the contract not be recorded and that the purchaser's proposed manner of payment was unacceptable.

In mid-May, 1970, the purchaser's attorney reduced the alleged oral agreement to writing. The purchaser signed the contract and delivered it to the appellee. The appellee subsequently refused to sign the contract and the closing scheduled for May 22 and May 27, 1970, was never consummated. During the latter part of May, 1970, the appellee signed a letter of intent to sell the property to another party for $155,000; $15,000 down and a purchase money mortgage of $140,000 for 20 years at 8%. The appellant did not act as broker during this transaction. This agreement was subsequently recorded.

It is well established that a real estate broker's right to commission accrues when the broker procures the purchaser of the property or when the broker procures a purchaser ready, willing and able to buy the property

on .agreed terms. *Sork v. Rand*, 422 Pa. 512, 222 A. 2d 890 (1966) ; *Stevenson v. Bannan*, 235 Pa. 512, 84 A. 447 (1912) ; *Freiwald v. Fidelity Interstate Casualty Co.*, 185 Pa. Superior Ct. 190, 138 A. 2d 146 (1958). The parties, however, have the right to create their own contract terms. If the agreement between the parties provides that the broker is not entitled to his commission until a condition is performed, then the broker has no claim to his commission until that condition is satisfied. *Clark v. Provident Trust Company of Philadelphia*, 329 Pa. 421, 198 A. 36 (1938) ; *Freiwald v. Fidelity Interstate Casualty Co.*, supra. These principles apply with equal force to oral as well as written brokerage contracts. *White Realty and Insurance Agency Company v. Moreland*, 215 Pa. Superior Ct. 423, 259 A. 2d 461 (1969) ; *Matuszewski v. Grisius*, 118 Pa. Superior Ct. 196, 180 A. 130 (1935).

In the instant case, the parties agreed that the amount of the commission was 10% of the sales price. They further agreed that $5000 was to be paid at closing, and the remainder paid at the rate of $1000 a year. The appellant's testimony reflects the parties' understanding as to when the commission became due:

"Q. There was no discussion about if the deal didn't consummate, you wouldn't be entitled to a commission?

"A. That's a known fact.

"Q. That is a known fact: if the deal is not consummated, you are not entitled to your commission?

"A. If we didn't attend the closing and you couldn't convey property if it wasn't a clear deal, general warranty deed or something of that nature there is no commission.

. . .

"Q. What was your understanding with Andrew Tile and Manufacturing Corporation and Mr. Tartaglione concerning the payments of that commission if the deal was never completely concluded?

"A. For lack of being able to convey title or for just not being able to close the transaction.

"Q.   Not closing the transaction, let's start with that one.

"A.   If we couldn't close the transaction because of the buyer's not qualifying then there was no agreement.

"Q.   All right. Let's say there couldn't be a good conveyance of title, what was your understanding then?

"A.   There was no agreement.

"Q.   And no commission?

"A.   Correct."

This testimony demonstrates that the buyer's failure to close the deal for any reason terminated the obligation to pay commission. There being no conditions to the agreement, we must apply the general rule that the commission accrues when the broker either produces the purchaser of the property or produces a purchaser who is ready, willing and able to buy the property on agreed terms. It is conceded that the appellant did not procure the purchaser of the property. His right to recover, therefore, must depend solely upon whether he procured a prospective purchaser who was ready, willing and able to buy on agreed terms.

In denying appellee's motion for judgment n.o.v., the lower court found that there was sufficient evidence which indicated "that there was unilateral performance by Dixon of that [brokerage] contract by his producing a buyer ready, willing and able to purchase the property." Testimony introduced in appellant's behalf indicated that the parties had verbally agreed to all the terms and the appellee refused to sign the written contract evidencing this verbal agreement. The fact that the written contract was not signed would have effect if the action were between the seller and the purchaser on the contract for sale. However, appellant fully performed his part of the brokerage contract by procuring a purchaser who was not only ready, willing and able to buy on terms agreed to by both parties, but who also had duly executed and delivered a signed contract to that effect. Cf. *Simon v.*

*H. K. Porter Company*, 407 Pa. 359, 180 A. 2d 227 (1962); *Detchon v. McSorley*, 301 Pa. 493, 152 A. 689 (1930). Under the evidence produced by appellant, which the jury evidently believed, appellant had fully earned his commission by procuring a purchaser on terms and conditions acceptable to the appellee. Having determined that the appellant sufficiently proved his case at trial, we must determine if the lower court properly granted appellee's motion for a new trial.

The standard governing the grant of a new trial on the ground that the verdict is against the weight of the evidence is well-settled. " 'The grant of a new trial lies within the sound discretion of the trial judge, who is present at the offering of all relevant testimony, but that discretion is not absolute; this court will review the action of the court below and will reverse if it determines that it acted capriciously or palpably abused its discretion.' " *Burrell v. Philadelphia Electric Company*, 438 Pa. 286, 288-289, 265 A. 2d 516, 517 (1970). A lower court, however, may not grant a new trial merely because it believes that the jury should have decided differently. A new trial should not be granted on the ground that the verdict is against the weight of the evidence where the evidence is conflicting and the jury could have decided in favor of either party. *Hilliard v. Anderson*, 440 Pa. 625, 271 A. 2d 227 (1970); *Burrell v. Philadelphia Electric Company*, supra; *Carroll v. Pittsburgh*, 368 Pa. 436, 84 A. 2d 505 (1951). "A new trial should be awarded on the ground that the verdict is against the weight of the evidence only when the jury's verdict is so contrary as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. *Jones v. Williams*, 358 Pa. 559, 564, 58 A. 2d 57; *Carroll v. Pittsburgh*, supra, at 447; *Brown v. McLean Trucking Co.*, 434 Pa. 427, 429-30, 256 A. 2d 606 (1969)." *Burrell v. Philadelphia Electric Company*, supra at 289, 265 A. 2d at 518. See also *Naponic v. Carl-*

*ton Motel, Inc.,* 221 Pa. Superior Ct. 287, 289 A. 2d 473 (1972). Essentially, we must examine the trial court's grant of a new trial in the light of the seriousness of the jury's departure from the result which the trial court feels is dictated by the evidence. When the evidence is contradictory and the case close, the jury verdict must be given greater weight. See *Gilligan v. Shaw,* 441 Pa. 305, 272 A. 2d 462 (1971); *Austin v. Ridge,* 435 Pa. 1, 255 A. 2d 123 (1969); *Reese v. Hughes,* 223 Pa. Superior Ct. 311, 299 A. 2d 653 (1973).

The lower court granted appellee's motion for a new trial because it felt that the verdict was against the weight of the evidence. At trial, the appellant introduced four witnesses in his behalf. Each witness testified that there had been complete agreement on all terms. On the other hand, appellee's President, the sole witness in its behalf, testified that the parties continued to disagree whether the contract was to be recorded and how the payments were to be made. The evidence was contradictory, and the case close. Because the appellee sold the property for a greater sum immediately prior to the scheduled closing with appellant, and that contract was recorded, the jury could have determined that appellee's testimony was incredible. Under these circumstances, the lower court abused its discretion when it granted appellee's motion for a new trial.[2]

The order of the lower court is reversed and the verdict reinstated.

PRICE, J., did not participate in the consideration or decision of this case.

---

2. In granting appellee's motion for a new trial, the lower court emphasized the fact that the purchaser's attorney, who testified for the appellant at trial, was guilty of unethical conduct during the negotiations for the sale of the property. This fact, however, should have no bearing on the issue of appellant's right to recover his commission.