**In re CENTURY FOODS, INC.,
American Leisure Services, Inc.,
Glockenspiel, Inc., Debtors.**

**Bankruptcy Nos. 5–82–00490, 5–82–00551
and 5–82–00552.**

United States Bankruptcy Court,
M.D. Pennsylvania.

May 31, 1984.

## OPINION AND ORDER

THOMAS C. GIBBONS, Bankruptcy Judge:

In this proceeding we address the merits of a real estate broker's application for payment of fees. Perry S. Long (Long), a real estate broker and employee of Stimmel-Graul & Associates, requests this court to award him a commission in the sum of Thirty-Six Thousand ($36,000.00) Dollars as reasonable compensation for professional services he performed on behalf of the bankruptcy estate. The Trustee objects to the broker's commission claiming Long's employment ,was never approved by the court pursuant to 11 U.S.C. § 327(a). For the reasons provided herein, we find the broker's employment was approved by the court and that Long is entitled to reason-

able compensation in the amount of Eighteen Thousand ($18,000.00) Dollars.

The facts are as follows. The debtors filed a Petition under Chapter 7 of the Bankruptcy Code. Shortly thereafter, a Trustee was selected to represent the estate and an attorney for the Trustee was appointed. Long contacted the attorney for the Trustee in March of 1983 concerning arrangements for obtaining a purchaser for an asset of the estate known as the Glockenspiel Restaurant. Long contends that part of the discussions with the attorney for the Trustee included an understanding that should any of Long's clients registered with the Trustee purchase any of the properties of the estate, including the Glockenspiel, Stimmel-Graul would receive six (6%) per cent of the gross sales price as a broker's commission. On March 16, 1983, Long inspected the Glockenspiel with Mr. Thomas Norman (Norman), General Manager of the Reading Motor Inn. Norman had been unsuccessful in attempting to contact the principals of the Glockenspiel for approximately one (1) year before inspecting the property. After the inspection, however, Norman informed Long that he wanted to deal directly with the Trustee rather than using Long to negotiate the deal. Long gave Norman the Trustee's phone number, enabling Norman to make the initial contact between the seller and the buyer. Long never prepared nor proposed an Agreement of Sale and did not participate in negotiations or attend the closing. In April of 1983, after the sale was consummated between the buyer and the seller, the attorney for the Trustee notified Long that he would make a request to the Bankruptcy Court for a commission based on the services Long provided for the estate. On October 24, 1983 an Order for Appointment was approved by this court. A separate application for compensation was filed and a hearing on the application was held on December 13, 1983.

Long asserts he is entitled to a commission in the amount of 6% of the gross sales price because he found a purchaser (Norman) for the Glockenspiel. The Trustee responds that Long's employment was never approved by the court pursuant to § 327(a) and, therefore, any services provided by Long were not compensable from the estate. In addition, the Trustee contends that pursuant to the agreement between the Trustee and Long, the commissions hinged on Long producing a written agreement of sale. Only after a written agreement of sale was produced would the Trustee petition the court for appointment and compensation. Long contends that this requirement was not part of the agreement between himself and the Trustee. The Trustee further argues that a study of the services provided by Long reveals that he failed to carry out the obligations of a broker attempting to secure a commission.

Before addressing the issues raised by the parties under the Bankruptcy Code, we must first determine what the terms of the agreement were between the Trustee and Long concerning Long's entitlement to a commission. Resolution of this issue is important because under state law:

> "[i]t is well established that a real estate broker's right to commission accrues when the broker procures the purchaser of the property or when the broker procures a purchaser ready, willing and able to buy the property on agreed terms. (Cites omitted). The parties, however, have the right to create their own contract terms. If the agreement between the parties provides that the broker is not entitled to his commission until a condition is performed, then the broker has no claim to his commission until that condition is satisfied. (Cites omitted). These principles apply with equal force to oral as well as written brokerage contracts. (Cites omitted)."

*Dixon, Appellant v. Andrew Tile and Manufacturing Corporation*, 238 Pa.Super. 275, 357 A.2d 667 (1976).

Long asserts the oral agreement between himself and the Trustee provided that Long would be entitled to a 6% commission if he found a prospective purchaser for any of the property of the estate. The Trustee, on the other hand, contends that

any compensation in this matter hinged on Long producing a written agreement of sale. The testimony of both parties regarding the exact terms of the agreement was inconsistent. Long, however, introduced into.evidence various correspondence between himself and the Trustee's attorney reflecting the terms of the agreement as understood by Long. The attorney for the Trustee testified that Long misunderstood exactly what obligations needed to be satisfied, in particular, producing a written agreement of sale, in order to approach this court with an application for services rendered to the estate. The Trustee's attorney further testified that he informed Long that an application for approval of fees would have to be presented to this court. On October 24, 1983, this court signed an Order approving Long's employment and providing that request for fees would be made by separate application. Although the testimony of both parties is credible, we find that they agreed this court should determine a reasonable fee as contemplated by Long's "Application to be Appointed Realtor" and the Trustee's consent to that application.

The next issue for determination is whether Long's employment was indeed approved by this court permitting him to be compensated for his services pursuant to § 327(a). Section 327(a) provides:

### § 327. Employment of professional persons

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

■■■ The testimony adduced at trial reveals that Long provided his services to the estate far in advance of his application for employment. The Trustee's position is that Long was never approved by the court. Yet, the same Trustee consented to having Stimmel-Graul & Associates employed in this proceeding nunc pro tunc. The Trustee's consent was filed together with the application and order requesting such employment. The application was presented and the order signed by the court with the understanding that Long would be employed in this proceeding nunc pro tunc. Although we realize that nunc pro tunc orders should be authorized sparingly, this court certainly has the discretion to administer equitable principles by entering such orders. See *3 Collier on Bankruptcy* ¶ 327.02 fn. 7. We are hard-pressed now to accept the Trustee's contention that Long was not appointed and approved by this court when the Trustee consented to Long's employment nunc pro tunc as authorized by our Order of October 24, 1983. Accordingly, we find that Long's employment was approved by this court nunc pro tunc and, therefore, he is entitled to compensation for services provided to the estate.

We must next decide what amount Long is indeed entitled to for his services. The Code does provide some guidelines and we direct the parties' attention to § 330 of the Code. Section 330 provides:

### § 330. Compensation of officers

(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328 and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title; and

\* \* \* \* \* \*

A hearing as directed by § 330(a) was held and much testimony was elicited concerning the type and extent of services provided to the estate by Long. The testimony indicates that after Long learned that the Glockenspiel Restaurant was for sale, he contacted the attorney for the Trustee and registered the buyer (Norman) as a client. In addition to the Glockenspiel, Long also submitted a number of restaurants that were included in the estate to Norman. Shortly thereafter, Long together with Marilyn Kurzweg, a caretaker of the Glockenspiel, inspected the property with Norman for a period of a little more than an hour. At this point Norman informed Long that he wished to deal directly with the Trustee. Long supplied Norman with the Trustee's phone number, thus allowing the initial contact between the ultimate purchaser and seller of the property. The evidence further indicates that Long did not produce a formal written sales agreement, participate in negotiations between the seller or buyer, or represent the buyer at the closing of the property. It is on the basis of these services that the Trustee asserts Long did not perform fundamental obligations of a broker. Long does not deny or even question that he did not assist in negotiating a sales price or attend the closing. Long does assert, however, that he performed all the services requested by the terms of his employment pursuant to the agreement with the Trustee.

■ We recognize that reasonable compensation as contemplated by § 330(a)(1) is not subject to any set definition but depends upon an analysis and thoughtful consideration of the facts of any particular case. Section 330(a)(1) does, however, direct us to compensate the professional for the actual and necessary services rendered to the estate based on elements such as the time, the nature, and the value of such services and the cost of comparable services other than in a case under the Bankruptcy Code. In this particular case, the value of the services rendered is reflected through the efforts of Long's procuring the eventual buyer of the Glockenspiel. In addition, he stood ready at all times to perform or take any action necessary to help complete the sale. We must stress that after Long secured a purchaser (Norman), it was Norman's action that effectively took the matter from Long's hands. Norman's request to deal directly with the Trustee and the Trustee's assertions that Long was not to be compensated because he did not produce a written sales agreement left Long with the prospect of being unable to collect compensation for the services he performed.

It is this court's opinion, however, that although the value and nature of the services rendered were substantial, they do not justify compensation in the amount of 6% of the gross sales price or $36,000.00 as requested by Long. In addition to providing the most vital service of initiating the contact between the buyer and the seller, the evidence indicates that Long's only involvement in the process leading to consummation of the sale was his one hour inspection tour of the Glockenspiel Restaurant with Norman and Kurzweg. In short, the time and extent of Long's services do not support his application requesting a $36,000.00 commission.

■ Another factor we considered in reaching our decision was the cost of comparable services other than in a case under the Bankruptcy Code. The only evidence presented to us concerning the cost of comparable services was Long's testimony that he normally would ask for ten (10%) per cent of the gross purchase price as a commission. We note that any "compensation in private employment noted in § (a) is a point of reference, not a controlling determinent of what shall be allowed in bankruptcy cases." *Historical and Revision Notes,* Notes of Committee on the Judiciary, Senate Report No. 95–989, U.S.Code Cong. & Admin.News 1978, p. 5787. We reject not only the 10% of the full purchase price as reasonable compensation for the services rendered, but also the 6% ($36,000.00) requested in Long's application as being excessive under the facts of this par-

ticular case. Consequently, we find that Long is entitled to reasonable compensation in the amount of Eighteen Thousand ($18,000.00) Dollars for the services rendered to the estate.

We make the above findings of facts and conclusions of law pursuant to Bankruptcy Rule 7052.