J-A09016-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| TAMMY CORNELIUS AND JAMES CORNELIUS, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| GREGORY J. MENIO, M.D., GREGORY J. MENIO, M.D., P.C. | |
| Appellee | No. 1382 EDA 2013 |

Appeal from the Judgment Entered May 3, 2013
In the Court of Common Pleas of Monroe County
Civil Division at No(s): No. 1551-CV-2007

BEFORE:  BOWES, J., OTT, J., and JENKINS, J.

MEMORANDUM BY OTT, J.:                    **FILED NOVEMBER 10, 2014**

Tammy Cornelius and James Cornelius (collectively, "Cornelius") appeal from the judgment entered May 3, 2013, in the Court of Common Pleas of Monroe County in favor of Gregory J. Menio, M.D., Gregory J. Menio, M.D., P.C. (collectively, "Dr. Menio"), following a jury trial. Cornelius claims: (1) "the Trial Court, 'a court of record,' improperly failed to record substantive aspects of the trial (including *voir dire*)," in violation of the Pennsylvania and United States Constitutions and Pennsylvania Rule of Judicial Administration 5000.2(g), (2) "the Trial Court erred in conducting *voir dire* in this medical malpractice case, … and [in] denying [Cornelius'] (improperly unrecorded) challenges for cause of prospective jurors," (3) "the Jury's 10-2 verdict in favor of [Dr. Menio] was so against the weight of the

evidence that a new trial is required," and (4) "the Trial Court erred by denying [Cornelius'] (improperly unrecorded) motions for mistrial[.]" Cornelius' Brief at 6.  Based upon the following, we affirm.

The parties are well acquainted with the underlying facts of this case, and therefore, at the outset, we simply state that Tammy Cornelius suffered a fall on March 1, 2005, and was treated by Dr. Menio, an orthopedic surgeon, between March 17, 2005, and August 12, 2005, for left knee pain. In August, 2005, on her own, she sought a second opinion, and was ultimately diagnosed with an infection in her left knee in September, 2005. She underwent a knee replacement on April 20, 2006.

On March 5, 2007, this action was commenced by writ of summons.  A complaint, alleging professional negligence in failing to diagnose Tammy Cornelius' left knee infection, was filed on April 13, 2007.  Jury selection was held on October 2, 2012, followed by trial from October 29, 2012, through November 5, 2012.  On November 5, 2012, the jury reached a 10-2 verdict in favor of Dr. Menio, finding that he did not breach the standard of care and was not negligent.

On November 13, 2012, Cornelius filed a statement of proceedings under Pa.R.A.P. 1923 and 1924, regarding, *inter alia*, Cornelius' challenges for cause of prospective jurors at the *voir dire* hearing. On November 15, 2012, Cornelius filed a motion for post-trial relief, which included a request

for notes of testimony of all sidebar conferences, "including but not limited to *voir dire* of the jury,"[1] and on November 16, 2012, filed supplemental exhibits to the statement of proceedings. On November 15, 2012, Dr. Menio filed objections to Cornelius' statement of proceedings, and, on November 26, 2012, filed a response to Cornelius' post trial motion.

The trial transcript was filed on January 31, 2013. Subsequently, the deadline for the parties' briefs on the post-trial motion, originally March 12, 2013, was rescheduled to April 2, 2013. On April 11, 2013, the trial court heard argument on Cornelius' post trial motions, and took the matter under advisement. Thereafter, Cornelius filed a motion to supplement the record, an amended motion for supplementation seeking the trial judge's jury list/jury strike list, and second and third supplemental appendices to the brief. Dr. Menio filed corresponding objections and responses.

On April 29, 2013, the trial court ordered:

> AND NOW, this 29th day of April, 2013, upon consideration of [Cornelius'] requests to supplement the record after the April 2, 2013 [briefing] deadline are hereby DENIED.
>
> [Cornelius'] Motion to obtain a copy of the notes regarding strikes for cause held at sidebar … on October 2, 2012 is hereby DENIED. Neither counsel requested the court monitor to be present at that time.
>
> A copy of the strike list from jury selection is not in the file and apparently cannot be found.

---

[1] Cornelius' motion for post-trial relief, 11/15/2012, at ¶14.

Order, 4/29/2013.

On May 3, 2013, Cornelius filed a praecipe for entry of judgment pursuant to Pa.R.C.P. 227.4(1)(b), and filed a notice of appeal on May 6, 2013. The trial court did not direct Cornelius to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b), and issued no Rule 1925(a) opinion. On August 12, 2013, Dr. Menio filed with this Court a motion for remand for purposes of affording the trial court the opportunity to write a Rule 1925(a) opinion, and Cornelius filed a response in opposition to the motion. This Court, by *per curiam* order of September 13, 2013, denied Dr. Menio's motion for remand.[2] **See** Order, 9/13/2013.

_____

[2] This Court's Order states:

> Appellees have filed an application for remand, alleging that the trial court has neither disposed of appellants' timely filed post-trial motions, nor written a Pa.R.A.P. 1925(a) opinion; appellants have filed an answer opposing the requested relief.

> Appellants filed timely post-trial motions on November 15, 2012. Pa.R.C.P. 227.4(1)(b) states in pertinent part: "[T]he prothonotary shall, upon praecipe of a party enter judgment upon a nonsuit by the court, the verdict of a jury or the decision of a judge following a trial without a jury, if one or more timely post-trial motions are filed and the court does not enter an order disposing of all motions within one hundred and twenty days after the filing of the first motion." Judgment was entered on the trial court docket pursuant to appellants' praecipe on May 3, 2013.

> Accordingly, appellees' application for remand, is DENIED.

Order, 9/13/2013.

Cornelius first contends "[t]he trial court, as a 'court of record,' improperly failed to record substantive portions of the trial, violating not only the Judicial Code and Rules of Court, but also the Pennsylvania and United States Constitutions." Cornelius' Brief at 24. Cornelius' claim concerns the sidebar conferences held during jury selection on October 2, 2012.

Initially, we note Dr. Menio's position that Cornelius has waived this issue by "[h]aving failed to make any timely requests that sidebar discussions be recorded and having failed to interpose timely objections where sidebars were not recorded[.]" Dr. Menio's Brief at 15.[3] We agree.

It is well settled that a party must make a timely, specific objection during trial to preserve an issue for appeal. *See Takes v. Metropolitan Edison Company*, 695 A.2d 397, 400 (Pa. 1997). Here, the first time Cornelius raised the issue that *voir dire* sidebar conferences were not recorded was in the post trial motion. Cornelius' counsel made no request for the recording of sidebar conferences during jury selection, and never raised an objection to the trial court that *voir dire* sidebars were not recorded. While Cornelius argues "[t]here is no record of counsel being

_____

[3] Dr. Menio also contends that Cornelius should be estopped from pursuing this first issue, asserting that by filing the praecipe for judgment and opposing remand for a Pa.R.A.P. 1925(a) opinion, Cornelius ensured there was no trial court opinion to assist this Court in reviewing the trial court's discretionary courtroom procedures. *See* Dr. Menio's Brief at 15.

- 5 -

informed by the [t]rial [c]ourt the sidebars in question were off the record,"[4] it is counsel's obligation to be conscious of courtroom practices and procedures and to raise an objection in the event of disagreement. Accordingly, as the issue of recording the sidebars was never raised until post-trial motions, this issue is waived.[5]  ***See Takes, supra.***

Moreover, Cornelius' substantive argument that "the trial court has the ultimate responsibility to ensure an adequate record for review including sidebars,"[6] relying on Pennsylvania Rule of Judicial Administration 5000.2(g),[7] is meritless.

By way of background, Pennsylvania Rule of Judicial Administration 5000.1, "Scope," states:

> These Rules shall govern, within the unified court system, both the employment and basic duties of all reporters and the production of transcripts, as defined in Rule 5000.2.

Pa.R.J.A. 5000.1.  Rule 5000.2, "Definitions," states, in relevant part:

---

[4] Cornelius' Brief at 30.

[5] It bears mention that on four separate occasions during trial, Cornelius' counsel preserved objections raised in off-the-record sidebars and an in-chambers discussion by following those discussions with an on-the-record sidebar.  ***See*** N.T., 10/31/2012, at 138–139; 11/1/2012, at 170–173; 11/2/2012, at 1016–1017; and 11/5/2012, at 7.

[6] ***Id.*** at 28.

[7] ***Id.*** at 26.

(g) Transcript of trial. ***The voir dire examination of jurors***, opening or closing statements of counsel, or the reading into the record or for the benefit of the jury any written document which is also accepted into evidence as an exhibit shall be recorded, but not transcribed, unless otherwise ordered.

Pa.R.J.A. 5000.2(g) (emphasis supplied).

Here, "[t]he *voir dire* examination of jurors" was recorded, and Rule 5000.2(g) does not address sidebar conferences. Furthermore, a court monitor was present in the courtroom but was not requested by Cornelius' counsel to record the sidebars.

Our own research has not revealed any authority for the proposition that a trial court is required to ensure that sidebar conferences are recorded in the absence of a request. It is not the role of the trial court to protect the record for the litigants. Rather, that obligation falls upon the litigants. ***See Dilliplaine v. Lehigh Valley Trust Company***, 322 A.2d 114, 116–117 (Pa. 1974) ("Appellate court consideration of issues not raised in the trial court results in the trial becoming merely a dress rehearsal. This process removes the professional necessity for trial counsel to be prepared to litigate the case fully at trial and to create a record adequate for appellate review."). Accordingly, we reject Cornelius' first issue as waived, and, in any event, meritless.

Secondly, Cornelius claims:

The trial court erred in conducting *voir dire* in this medical malpractice case, by arbitrarily allotting only a total of one hour for *voir dire*, unduly limiting *voir dire*, cutting off [Cornelius'] counsel during *voir dire*, and by itself asking general, preemptive "rehabilitative questions" of unsworn prospective jurors, and by

- 7 -

denying [Cornelius'] (improperly unrecorded) challenges for cause of prospective jurors.

Cornelius' Brief, at 6.

Our standard of review of the trial court's conduct of *voir dire* is as follows:

> The sole purpose of *voir dire* examination is to secure a fair, competent and impartial jury. To achieve this purpose, general questions should be permitted so that it can be determined whether any of the veniremen have a direct or even a contingent interest in the outcome of the litigation or the parties involved. ***The scope and extent of voir dire examination is within the sound discretion of the trial court and the trial court's rulings thereon will not be disturbed absent a clear abuse of that discretion.***

*Capoferri v. Children's Hosp. of Philadelphia*, 893 A.2d 133, 138 (Pa. Super. 2006) (quoting *Ball v. Rolling Hill Hospital*, 518 A.2d 1238, 1244-45 (Pa. Super. 1986)) (emphasis added).

The trial judge, at the outset, addressed Cornelius' counsel stating:

> With that, Mr. Foley if you're ready to start the *voir dire*. I just received a copy of the proposed questions and with that number you'll never get through that in an hour so you'll have to prioritize somewhat.

N.T., 10/2/2012, at 4–5. Review of the record shows that Cornelius' counsel was not improperly limited or prevented by the court from questioning the prospective jurors. While Cornelius contends the trial court cut off counsel's questioning of the jurors regarding Mountain Valley Orthopedics, the practice group Dr. Menio joined after the events at issue, the record reflects that the trial court's effort was to streamline the questioning and not to prevent

Cornelius' counsel's inquiries.[8]  Furthermore, although Cornelius complains that the trial court "cut him off" when he followed up a question to a prospective juror, Juror Cathers, regarding "frivolous lawsuits," with a question whether defenses should also be screened, we discern no abuse of discretion in the trial judge's decision to end the questioning of Juror Cathers.[9]

_____

[8] Specifically, the trial court stated:

> Excuse me, Mr. Foley, let me try to cut this a little shorter.  Of those of you who have raised your hand that you're a patient or a family member is a patient of Mountain Valley Orthopedics, will that fact prevent you from rendering a fair and just decision in this case?  If you think it will raise your hand or your paddle. Okay, you can continue.

N.T., 10/2/2012, at 11.

[9] The exchange between Cornelius' counsel and Juror Cathers occurred as follows:

> MR. FOLEY:  What do you think about frivolous lawsuits?
>
> MR. CATHERS:  I don't think they should get to the point of being litigated for something that's trivial or somebody wants to sue somebody for something that really has the degree of importance that it should have reached.  For instance somebody that just doesn't want to pay unemployment hours.  They set up a hearing just because that person doesn't want to pay unemployment and they fire somebody without just cause or somebody who just wants to sue somebody for something that's not really -- doesn't have a really significant level of importance, something that's minute.
>
> I think it wastes time -- court's time and it costs money and I don't think they should be – I screened.  There should be a

*(Footnote Continued Next Page)*

Cornelius next contends that the trial court erred in failing to grant Cornelius' motions to strike for cause as to Jurors #1, 2, 5, 6, 10, 11, 20, and 22. Cornelius claims these prospective jurors had "close 'situational relationships' with Dr. Menio and/or Pocono Medical Center (where Defendant Dr. Menio and his partners are on staff, and his wife Elizabeth Menio is a member of the auxiliary) where some of the events and testing in this case took place." Cornelius' Brief at 58.

*(Footnote Continued)* ———————————

> significant level of something that's important before it reaches that.
>
> MR. FOLEY: Do you think that defenses should be screened also?
>
> MR. CATHERS: Defenses?
>
> MR. FOLEY: Yes. You had mentioned not paying unemployment.
>
> MR. CATHERS: Well a person that they're filing suit against.
>
> MR. FEENEY: Your Honor, may we approach?
>
> THE COURT: We're going to stop it right there. The next [juror] is 26.
>
> ****
>
> MR. FOLEY: If we prove to you that this is not a frivolous lawsuit and that Tammy Cornelius suffered a serious injury because of the negligence of Dr. Menio, would anybody have difficulty in awarding appropriate damages for Tammy Cornelius? Anybody? Hearing none.

N.T., 10/2/2012, at 15–17.

- 10 -

As previously discussed, Cornelius made no request to record the *voir dire* sidebar conferences, and there is no record of counsels' requests for strikes for cause and exercise of peremptory strikes. Dr. Menio asserts that this issue has been waived as Cornelius did not object on the record at jury selection.[10] We agree.

On November 13, 2012, Cornelius filed with the trial court a statement of proceedings pursuant to Pa.R.A.P. 1923 and 1924.[11] The trial court made no ruling on Cornelius' statement of proceedings, which sought to remedy

---

[10] *See* Dr. Menio's Brief at 24, citing *Dilliplaine v. Lehigh Valley Trust Company*, 322 A.2d 114, 116–117 (Pa. 1974).

[11] Pennsylvania Rule of Appellate Procedure 1923 provides:

> If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection. The statement shall be served on the appellee, who may serve objections or propose amendments thereto within ten days after service. Thereupon the statement and any objections or proposed amendments shall be submitted to the lower court for settlement and approval and as settled and approved shall be included by the clerk of the lower court in the record on appeal.

Pa.R.A.P. 1923. Rule 1924 provides:

> In lieu of the record on appeal as defined in Rule 1921 (composition of record on appeal), the parties may prepare and sign a statement of the case showing how the issues presented by the appeal arose and were decided in the lower court and setting forth only so many of the facts averred and proved or sought to be proved as are essential to a decision of the issues presented. If the statement conforms to the truth, it, together

*(Footnote Continued Next Page)*

the failure to do that which should have been done, *i.e.*, request the recording of the sidebars. Significantly, the trial court did rule on Cornelius' post-trial motion request for a copy of the notes regarding the strikes for cause, and denied the motion, stating that "***[n]either counsel requested the presence of the court monitor at that time***," and the strike list from jury selection could not be located. **See** Order, 4/29/2013, **supra** (emphasis added). Given that the *voir dire* sidebar discussions were not preserved and the requests for strikes for cause were not made on the record, we conclude this issue of the court's denial of strikes for cause has been waived. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Moreover, even accepting Cornelius' reconstruction of the sidebar motions to strike for cause, we would find no basis upon which to grant relief. As will be more fully discussed below, the record created at *voir dire*

_(Footnote Continued)_ ─────────────

with such additions as the lower court may consider necessary fully to present the issues raised by the appeal, shall be approved by the lower court and shall then be certified to the appellate court as the record on appeal and transmitted thereto by the clerk of the lower court within the time prescribed by Rule 1931 (transmission of the record). Copies of the agreed statement and the order from which the appeal is taken may be filed as the reproduced record.

Pa.R.A.P. 1924.

- 12 -

is inadequate to support Cornelius' claim that the trial court erred in refusing to strike the jurors.

Our standard of review of the trial court's denial of a motion to strike a potential juror for cause is well settled:

> The test for determining whether a prospective juror should be disqualified is whether he is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence, and this is to be determined on the basis of answers to questions and demeanor . . . . **A challenge for cause should be granted when the prospective juror has such a close relationship, familial, financial, or situational, with the parties, counsel, victims, or witnesses that the court will presume a likelihood of prejudice[,]** or demonstrates a likelihood of prejudice by his or her conduct and answers to questions. Our standard of review of a denial of a challenge for cause differs, depending upon which of these two situations is presented. In the first situation, in which a juror has a close relationship with a participant in the case, the determination is practically one of law and as such is subject to ordinary review. In the second situation, when a juror demonstrates a likelihood of prejudice by conduct or answers to questions, much depends upon the answers and demeanor of the potential juror as observed by the trial judge and therefore reversal is appropriate only in the case of palpable error. When presented with a situation in which a juror has a close relationship with participants in the litigation, we presume prejudice for the purpose of [en]suring fairness.

*McHugh v. P&G Paper Prods. Co.*, 776 A.2d 266, 270 (Pa. Super. 2001) (footnote, citations, internal quotation marks, and original modifications omitted) (emphasis supplied).

Preliminarily, we address two relevant cases: *McHugh v. Proctor & Gamble Paper Prods. Co., supra*, and *Cordes v. Assocs. of Internal*

*Med.*, 87 A.3d 829 (Pa. Super. 2014) (*en banc*), , ___ A.3d ___ (Pa. October 28, 2014).[12]

In **McHugh**, an insured worker brought a premises liability claim *appeal denied* against Proctor & Gamble Paper Products Company ("P&G"). On appeal from the judgment entered in favor of P&G, the plaintiff challenged the trial court's refusal to strike for cause three prospective jurors who were employees of P&G at the time of trial, and who indicated that they knew Mr. Fellin, P&G's employee who would be sitting at counsel table as P&G's in-court representative. **McHugh**, 776 A.2d at 268–270. The plaintiff also challenged the trial court's refusal to strike for cause a fourth juror, who was the father-in-law of Mr. Fellin. **Id.** The **McHugh** Court, in vacating the judgment in favor of the defendant, and awarding a new trial, held "the employer/employee relationship evokes a presumption of

_____

[12] On March 12, 2014, while this case was pending on appeal, this Court decided **Cordes v. Assocs. of Internal Med.**, 87 A.3d 829 (Pa. Super. 2014) (*en banc*), *appeal denied*, ___ A.3d ___ [192 WAL 2014] (Pa. October 28, 2014), and vacated the judgment, reversed the order denying a mistrial, and remanded for a new trial.

Judge Wecht filed an Opinion in Support of Reversal in which Judge Bender joined. Judge Bowes and Judge Gantman concurred in the result. Judge Donohue filed a separate Opinion in Support of Reversal in which Judge Gantman and this author joined. Judge Bowes concurred in the result. Judge Olson filed a Dissenting Opinion, joined by Judge Allen. Former President Judge, now Justice Stevens did not participate in the consideration or decision of the case.

prejudice so significant as to warrant disqualification of employees of a party." *Id.* at 270. Additionally, the Court concluded that a close familial relationship existed in the case of the juror who was the father-in-law of Mr. Fellin, P&G's in-court representative, which should have compelled the trial court to strike the juror for cause. *Id.* at 272–273.

Recently, this Court decided **Cordes v. Assocs. of Internal Med.**, *supra*, a medical malpractice action that ended in a jury verdict in favor of the defendants, including, *inter alia*, the plaintiff's doctor, and the entity that owned the doctor's practice, Tri-State. Judge Wecht, in his Opinion in Support of Reversal (W.O.S.R.), concluded the trial court erred in refusing to presume prejudice and strike for cause the husband of a patient of the defendant doctor (Juror Snowden); the daughter of a patient of the defendant doctor (Juror Kaelin); and an employee of Heritage Valley Health Systems, the parent company of Tri-State (Juror Majors). Judge Wecht opined: "It cannot be gainsaid that the spousal and filial relationships are among the closest of human connections. Accordingly, the trial court erred when it declined to disqualify Ms. Kaelin and Mr. Snowden as jurors." **Cordes**, 87 A.3d at 838 (W.O.S.R.) (footnote omitted). He further wrote: "[W]e hold that Mr. Majors' employment relationship with Heritage Valley, which had an undisputed financial interest in the outcome of the litigation recognized by Mr. Majors, created a sufficient risk of partiality to establish prejudice *per se* arising from his jury service." *Id.* at 845 (footnote omitted).

Judge Donohue, in her Opinion in Support of Reversal (D.O.S.R.), joined Judge Wecht's holding that prejudice should be presumed based upon the physician/patient relationship between the Juror Snowden's wife and the defendant doctor, and agreed that the trial court erred by failing to discharge for cause Juror Kaelin and Juror Majors, based upon a separate rationale. *Id.* at 863 (D.O.S.R.) With regard to Juror Kaelin, Judge Donohue "disagree[d] with Judge Wecht that the simple fact that the juror's parents were patients of the defendant doctor in this medical malpractice case required her exclusion from the jury," opining that it was "Juror Kaelin's involvement in her parents' medical affairs and knowledge about her parents' positive perception of the defendant [doctor that] gives the appearance of favor and partiality, warranting a presumption of prejudice[.]" *Id.* at 868. Judge Donohue further opined, "I do not believe that Juror Majors' employer's ownership interest in Tri-State supports a challenge for cause and, to the extent that Judge Wecht holds that it does, I disagree." *Id.* at 869. She reasoned: "The purported employment relationship between Juror Majors and Dr. Ray, standing alone, is too attenuated to warrant the grant of a challenge for cause in this case," but "the presumption of prejudice here derives from Juror Majors' perception of the financial impact the verdict could have on his employer." *Id.* at 869–870.

Turning to the present case, Cornelius identifies the following eight jurors, for whom motions to strike for cause were denied:

Juror #1, Barbara Page

Juror #2, Carmen Perez

Juror #5, Scott Decker

Juror #6, Boyd Allen Counterman

Juror #10, Mary Ellen Weikel[13]

Juror # 11, Robert George McClenathen

Juror #20, Denise Smith

Juror #22, Adrienne Franklin

The testimony offered by Jurors #1, 2, 5, 6, 11, 20, and 22, regarding

Dr. Menio is as follows:

MR. FOLEY:  … The lawsuit is against Dr. Menio.  Does anyboby know Dr. Menio?  Mrs. Page, how do you know Dr. Menio?

MS. PAGE:  I'm a newly retired school nurse and I've taken care of students who have been patients of Dr. Menio within the school system.

MR. FOLEY:  For how long?

MS. PAGE:  I've been a school nurse for over thirty years.

MR. FOLEY:  Ma'am?

UNIDENTIFIED JUROR [IDENTIFIED AS CARMEN PEREZ]:  I work at the hospital and sometimes we need –

THE COURT:  I'm sorry, I can't hear.

---

[13] Cornelius indicates the trial court granted Dr. Menio's motion to strike Juror #10, Mary Ellen Weikel.  **See** Cornelius' Brief at 60.  Since Cornelius was not required to use a peremptory strike, there can be no basis for any complaint by Cornelius as to Juror #10.  Therefore, we do not discuss her further.

UNIDENTIFIED JUROR:  -- to refer patients to him.

MR. FOLEY:  So you've treated some of Dr. Menio's patients?

UNIDENTIFIED JUROR:  Yes.

MR. FOLEY:  Mr. Decker.

MR. DECKER:  A couple years ago I was a patient of Dr. Menio[']s.  He was supposed to do knee surgery on me, but I found out I was a diabetic right before the surgery so it never went through.

MR. FOLEY:  How long did Dr. Menio treat you?

MR. DECKER:  I only met with him a few times because the surgery was already planned and everything but right before the surgery, my pre-op was when I found out I was a diabetic so the surgery was cancelled and I haven't been back since.

MR. FOLEY:  You did treat with him after the blood work?

MR. DECKER: I did. Yeah, he had sent me to the hospital to get all the preoperative blood work and everything that I needed to do before the surgery.

MR. FOLEY:  Would that affect your ability to sit on this trial?

MR. DECKER:  No, I haven't seen him or talked to him since.

MR. FOLEY:  Thank you.

MR: FEENEY:  Your Honor, may we approach?

THE COURT: Yes.

(Whereupon sidebar was held off the record)

\*\*\*

(Following the sidebar)

MR. FOLEY:  Mr. Counterman, how do you know him?

MR. COUNTERMAN: Yeah, my son had surgery done but other than that I don't personally know him.

MR. FOLEY: What type of surgery?

MR. COUNTERMAN: He had his bones redone as a correction and he had pins put in.

MR. FOLEY: I'll start over here. Anybody know Dr. Menio? How do you know Dr. Menio?

…

MR. FOLEY: Mr. McClenathan.

MR. MCCLENATHAN: The doctor is one of our panel doctors. He sees our work comp cases in the company I work for.

MR. FOLEY: What company do you work for?

MR. MCCLENATHAN: Walmart Distribution Center.

MR. FOLEY: Walmart?

MR. MCCLENATHAN: Yes.

MR. FOLEY: How do you know that he's a panel doctor for the worker's comp?

…

MR. MCCLENATHAN: I know the names of the panel doctors. He may have been in our facility once.

MR. FOLEY: You're a manger for the warehouse?

MR. MCCLENATHAN: Yes, I'm the general manager.

…

MR. FOLEY: Okay, I'm sorry. Anybody else? Mrs. Smith, or Ms. Smith.

MS. SMITH: My daughter is a patient of his.

MS. FRANKLIN: Yes. I'm an RN at the Pocono Medical Center and I've taken care of his patients.

N.T., 10/2/2012, at 7–10.[14]

The record does not demonstrate that any of the prospective jurors had a "close relationship, familial, financial, or situational,"[15] as in **McHugh** and **Cordes**.

With regard to Juror #1, Barbara Page, Cornelius' claim that she "only just recently ceased her working relationship with Dr. Menio,"[16] is belied by the record. Her testimony that, as a school nurse, she had taken care of students that were Dr. Menio's patients, fails to establish a "working relationship," nor was she questioned as to the number of such students.

_____

[14] The jury was seated as follows: Juror #1 was Barbara Page, Juror #2 was Carmen Perez, Juror #3 was Kevin Rosene, Juror #4 was Daniel Phillips, Juror #5 was Rachel Tinney, Juror #6 was Michael Ruocco, Juror #7 was Irene Jones, Juror #8 was Doreen Hicks, Juror #9 was Janet Zimich, Juror #10 was Frank Manheart, Juror #11 was Denise Smith, and Juror #12 was Maria Martinez. The first Alternate was William Kuntzman and the next Alternate was Richard Cathers. **See** N.T., 10/2/2012, at 28. As discussed, Cornelius had moved to strike for cause Jurors Page, Perez, and Smith.

Dr. Menio does not dispute Cornelius' statement that Cornelius had exhausted the peremptory challenges. **See Dixon v. Andrew Tile & Mfg. Corp.**, 357 A.2d 667, 668 n.1 (Pa. Super. 1976) ("It is harmless error to overrule a challenge for cause where it should have been sustained if all the peremptory challenges are **not** exhausted.") (citations omitted) (emphasis supplied).

[15] **McHugh, supra**, 776 A.2d at 270.

[16] Cornelius' Brief at 56.

Likewise, the testimony of Juror #2, Carmen Perez, and Juror #22, Adrienne Franklin, establishes only that these jurors knew of Dr. Menio from their work at the hospital, where Dr. Menio was on the staff. No employment relationship, or financial interest of themselves or their employer, was established as to these nurses.

Nor was a patient relationship established with regard to Juror #5, Scott Decker, who testified he had been a patient of Dr. Menio "a couple years ago," and met with Dr. Menio "only … a few times." N.T., 10/2/2012, at 8. Decker indicated there was no on-going doctor/patient relationship, stating, "I haven't seen or talked to him since." He also testified his ability to sit on the jury would not be affected. *Id*.

Juror #6, Counterman, and Juror #20, Smith, each indicated that they had a child who was a patient of Dr. Menio. There were no follow-up questions to determine whether the child was currently under the care of Dr. Menio and receiving treatment, whether the child was a minor or adult, and whether, and to what extent, if any, the juror was involved in his/her child's medical treatment by Dr. Menio. Counterman's statement that he did not "know him personally," referring to Dr. Menio, appears to indicate he had no involvement in his son's surgery by Dr. Menio. *Id.* at 9. Juror #20, Smith's statement that her daughter "is a patient of his," without more, does not indicate that her daughter was an active patient or that Smith was involved in her daughter's treatment. *Id.* at 10.

Finally, the testimony of Juror #11, Robert George McClenathan, who worked as a general manager at Walmart, was that he knew Dr. Menio as one of the panel doctors who "sees our work comp cases."[17] His comments did not suggest a co-employment relationship or any perceived financial interest of either himself or Walmart in the outcome of this case.

Here, Cornelius' counsel had the opportunity to make a record that established juror prejudice prior to the sidebar discussions of strikes for cause. However, without appropriate follow-up questioning to develop the relationships Cornelius argues existed, the challenged jurors' answers did not establish grounds to support motions to strikes for cause. Therefore, even had this issue been preserved, Cornelius' claim that the trial court erred in refusing to strike the jurors would not warrant a new trial.

The third issue raised by Cornelius is a challenge to the weight of the evidence.[18, 19] It is well settled that "a new trial should be granted only in

_____

[17] N.T., 10/2/2012, at 9.

[18] "The general rule in this Commonwealth is that a weight of the evidence claim is primarily addressed to the discretion of the judge who actually presided at trial." *Armbruster v. Horowitz,* 813 A.2d 698, 702 (Pa. 2002). "However, where a properly preserved weight of the evidence claim is raised on appeal and the judge who presided at trial failed to rule on the claim and is now permanently unavailable to do so, the claim must be reviewed by the appellate tribunal in the first instance." *Id.* at 705.

Here, as mentioned, Cornelius opposed Dr. Menio's application for remand for purposes of affording the trial court the opportunity to write a Rule 1925(a) opinion, and this Court denied the application for remand. *See* Footnote 3, *supra*. We note Dr. Menio's argument that Cornelius is

*(Footnote Continued Next Page)*

truly extraordinary circumstances, i.e., when the jury's verdict is *so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail*." **Armbruster v. Horowitz**, 813 A.2d 698, 703 (Pa. 2002) (citation omitted) (emphasis in original). Therefore, "a new trial will not be granted on the basis of a weight of the evidence claim unless the evidence supporting the verdict is so inherently improbable or at variance with admitted or proven facts or with ordinary experience as to render the verdict shocking to the court's sense of justice." **King v. Stefinelli,** 862 A.2d 666, 670 (Pa. Super. 2004). "Moreover, a new trial will not be granted on the ground that the verdict was against the weight of the evidence where the evidence is conflicting and the fact-finder could have decided in favor of either party." **Folger v. Dugan**, 876 A.2d 1049, 1053 (Pa. Super. 2005) (citation omitted).

_____

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯

estopped from challenging the weight of the evidence since he opposed the application for remand for a Rule 1925(a) opinion. Nevertheless, we will address Cornelius' weight claim.

[19] While Cornelius' motion for post-trial relief is reflected by the trial court's docket as timely filed on November 15, 2012, it is not contained in the certified record. However, a copy of the motion for post-trial relief is included in the reproduced record, and Dr. Menio has not disputed its accuracy. **See Prieto Corp. v. Gambone Constr. Co.**, ___ A.3d ___, ___ [2014 PA Super 196] (Pa. Super. September 10, 2014) (appellate court can consider undisputed document if it is in the reproduced record, even though it is not in the record that had been transmitted to the court)

After suffering a fall in the snow on the way to work on March 1, 2005 Tammy Cornelius was treated by Dr. Menio between March 17, 2005 and August 12, 2005, including a left knee arthroscopy on April 20, 2005. On May 10, 2005, Dr. Menio aspirated the knee and obtained a specimen, which was sent for culture and reported as negative for infection.

Cornelius claims, "The failure to investigate further and order further testing was negligence and increased the risk of harm to Tammy Cornelius." Cornelius' Brief at 68 (record citations omitted). Specifically, Cornelius argues:

> Mrs. Cornelius presented both preoperative and post operative infection presentations to the jury, and argued that Dr. Menio failed to properly investigate that possibility of infection after May 10, 2005, to further investigate the potential for infection, when he received a report on the less than 1 cc bloody aspiration specimen. Both parties agreed the infection was longstanding, slow moving, or indolent. If diagnosis had been timely made, Dr. Menio would have had multiple opportunities to intervene and treat between May 2005 and August 2005 when, ultimately, other subsequent treating physicians ordered the appropriate diagnostic tests, and diagnosed Mrs. Cornelius' longstanding infection. By the time of delayed diagnosis in August 2005, infection had completely destroyed her knee. Dr. Menio's failure to order appropriate testing or referral to radiologists or infectious disease doctors increased the risk of harm that Mrs. Cornelius ultimately suffered.

Cornelius' Brief at 73–74.

The record shows that the facts of Dr. Menio's treatment, care and referrals while Tammy Cornelius was his patient were fully presented at trial, as well as both parties' experts' opinions on the applicable standard of care and whether Dr. Menio breached the standard of care. Ultimately, this case

turned upon the jury's credibility determinations. Based on our review, and mindful of the standards that govern weight of the evidence claims, we discern no basis upon which to conclude that a new trial is warranted in this case. **See Armbruster, supra**, 813 A.2d at 706 (choice between two permissible views was not so contrary to the weight of the evidence as to shock one's sense of justice). **See also, Gunn v. Grossman**, 748 A.2d 1235, 1240 (Pa. Super. 2000) ("The weight to be assigned to expert testimony lies within the province of the jury."). Accordingly, no relief is due on this weight claim.

Finally, Cornelius argues that the trial court failed to ensure transcription of Cornelius' mistrial request on November 1, 2012, and erred in failing to grant a mistrial or give a curative instruction. Cornelius states, "[t]he court denied [Cornelius'] motion for mistrial in this instance where the [c]ourt monitor failed to transcribe the sidebar conference." Cornelius' Brief at 87.

Initially, we find Cornelius' request for a mistrial or curative instruction has been waived for failure to preserve the sidebar discussion and make a record of the request for mistrial. **See** Pa.R.A.P. 302(a), **supra**. Furthermore, the issue is waived since it was not raised in Cornelius' motion for post-trial relief. **See** Pa.R.C.P. 227.1(b)(2) ("Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds."). Order, April 29, 2013. In any event, we would find no basis for relief based upon this claim.

- 25 -

Our standard of review is well settled:

> "Generally, the granting or refusal of a mistrial is a matter within the discretion of the trial judge, and his or her decision will not be overruled by an appellate court except for manifest, clear, or palpable error amounting to an abuse of discretion."

*Bugosh v. Allen Refractories Co.*, 932 A.2d 901, 914–915 (Pa. Super. 2007).

The exchange at issue occurred during the direct examination of Dr. Menio, as follows:

> Q. Why are you sending a letter to Dr. Kipervas when she [Tammy Cornelius] was referred to you by the ER?
>
> A. Dr. Kipervas was her primary care doctor. She was also the gatekeeper of her insurance plan. Mrs. Cornelius is part of the Geisenger insurance plan and it is an HMO –
>
>     MR. FOLEY [CORNELIUS' COUNSEL]: Your Honor, could we approach?
>
>     THE COURT: Yes.
>
> (Whereupon sidebar was held off the record)

N.T., 11/1/2012, at 150.

Cornelius claims this exchange improperly referenced Dr. Kipervas as the "gatekeeper" of Cornelius' insurance plan, and the Geisenger Health Plan, in violation of the court's pre-trial order, barring the defense "from introducing or making reference to collateral source recoveries including … future medical benefits of the Plaintiff." Amended Order, 10/10/2012, at ¶¶2. However, our review leads us to conclude the references to Dr. Kipervas as "gatekeeper" and insurance were passing, contextual, and

without any prejudice that would have warranted the grant of a mistrial by the trial judge. *See Havasy v. Resnick*, 609 A.2d 1326, 1334 (Pa. Super. 1992) ("Pennsylvania courts have held that the mere mention of a third party source, such as insurance, does not automatically necessitate a new trial."), *overruled, in part, on other grounds, by* **Passarello v. Grumbine**, 87 A.3d 285 (Pa. Super. 2014). Accordingly, we would find no abuse of discretion on the part of the trial judge in denying the request for mistrial or curative instruction.

Therefore, this final claim, had it not been waived, would fail on the merits.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/10/2014